## UNITED STATES *v.* JOHNS ET AL.

No. 83–1625.   Argued November 28, 1984—Decided January 21, 1985

O'CONNOR, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, BLACKMUN, POWELL, REHNQUIST, and STEVENS, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post*, p. 488.

*Alan I. Horowitz* argued the cause for the United States. With him on the briefs were *Solicitor General Lee, Assistant Attorney General Trott, Deputy Solicitor General Frey, Joshua I. Schwartz,* and *Gloria C. Phares.*

*William G. Walker* argued the cause for respondents. With him on the brief were *Michael L. Piccarreta, Peter Keller, Nancy G. Postero, Walter B. Nash III,* and *Robert J. Hirsh.*

JUSTICE O'CONNOR delivered the opinion of the Court.

In *United States* v. *Ross*, 456 U. S. 798 (1982), the Court held that if police officers have probable cause to search a lawfully stopped vehicle, they may conduct a warrantless search of any containers found inside that may conceal the

object of the search. The issue in the present case is whether *Ross* authorizes a warrantless search of packages several days after they were removed from vehicles that police officers had probable cause to believe contained contraband. Although the Court of Appeals for the Ninth Circuit acknowledged that under *Ross* the police officers could have searched the packages when they were first discovered in the vehicles, the court concluded that the delay after the initial seizure made the subsequent warrantless search unreasonable within the meaning of the Fourth Amendment. 707 F. 2d 1093 (1983). We granted certiorari, 467 U. S. 1250 (1984), and we now reverse.

## I

Pursuant to an investigation of a suspected drug smuggling operation, a United States Customs officer went to respondent Duarte's residence in Tucson, Ariz., where he saw two pickup trucks. The Customs officer observed the trucks drive away, and he contacted other officers who conducted ground and air surveillance of the trucks as they traveled 100 miles to a remote private airstrip near Bowie, Ariz., approximately 50 miles from the Mexican border. Soon after the trucks arrived, a small aircraft landed. Although the Customs officers on the ground were unable to see what transpired, their counterparts in the air informed them that one of the trucks had approached the airplane. After a short time, the aircraft departed. A second small aircraft landed and then departed.

Two Customs officers on the ground came closer and parked their vehicles about 30 yards from the two trucks. One officer approached to investigate and saw an individual at the rear of one of the trucks covering the contents with a blanket. The officer ordered respondents to come out from behind the trucks and to lie on the ground. As he and the other officer walked towards the trucks, they smelled the odor of marihuana. They saw in the back of the trucks

packages wrapped in dark green plastic and sealed with tape. Based on their prior experience, the officers knew that smuggled marihuana is commonly packaged in this manner. Respondents Duarte, Leon, Gomez, Redmond, and Soto were arrested at the scene. The Customs Office surveillance aircraft followed the two small airplanes back to Tucson. Respondents Johns and Hearron, the pilots, were arrested upon landing.

The Customs officers did not search the pickup trucks at the desert airstrip. Instead, after arresting the respondents who were at the scene, the Customs officers took the trucks back to Drug Enforcement Administration (DEA) headquarters in Tucson. The packages were removed from the trucks and placed in a DEA warehouse. Without obtaining a search warrant, DEA agents opened some of the packages and took samples that later proved to be marihuana. Although the record leaves unclear precisely when the agents opened the packages, the parties do not dispute the conclusion of the Court of Appeals, 707 F. 2d, at 1095, that the search occurred three days after the packages were seized from the pickup trucks.

A federal grand jury in the District of Arizona indicted respondents for conspiracy to possess and possession of marihuana with intent to distribute, in violation of 21 U. S. C. §§ 841(a)(1) and 846. Before trial, the District Court granted respondents' motion to suppress the marihuana, and the Government appealed pursuant to 18 U. S. C. § 3731. The Court of Appeals rejected the Government's contentions that the plain odor of marihuana emanating from the packages made a warrant unnecessary and that respondents Johns and Hearron lacked standing to challenge the search of the packages. 707 F. 2d, at 1095–1096, 1099–1100. Neither of these issues is before this Court. Finally, the Court of Appeals held that *Ross* did not authorize the warrantless search of the packages three days after they were removed from the pickup trucks. 707 F. 2d, at 1097–1099. Because we disagree with this conclusion, we reverse.

## II

Respondents argue that we should affirm the suppression of the marihuana on the ground that the Customs officers never had probable cause to conduct a vehicle search, and therefore *Ross* is inapplicable to this case. Instead, respondents contend that *United States* v. *Chadwick*, 433 U. S. 1 (1977), establishes that the warrantless search was unlawful. These arguments are not persuasive. The events surrounding the rendezvous of the aircraft and the pickup trucks at the isolated desert airstrip indicated that the vehicles were involved in smuggling activity. The Customs officers on the ground were unable to observe the airplanes after they landed, and consequently did not see the packages loaded into the pickup trucks. After the officers came closer and detected the distinct odor of marihuana, they had probable cause to believe that the vehicles contained contraband. See *Carroll* v. *United States*, 267 U. S. 132, 149, 162 (1925). Given their experience with drug smuggling cases, the officers no doubt suspected that the scent was emanating from the packages that they observed in the back of the pickup trucks. The officers, however, were unaware of the packages until they approached the trucks, and contraband might well have been hidden elsewhere in the vehicles. We agree with the Court of Appeals, see 707 F. 2d, at 1097, that the Customs officers had probable cause to believe that not only the packages but also the vehicles themselves contained contraband.

Under the circumstances of this case, respondents' reliance on *Chadwick* is misplaced. In *Chadwick*, police officers had probable cause to believe that a footlocker contained contraband. As soon as the footlocker was placed in the trunk of an automobile, the officers seized the footlocker and later searched it without obtaining a warrant. The Court in *Chadwick* refused to hold that probable cause generally supports the warrantless search of luggage. 433 U. S., at 11–13. *Chadwick*, however, did not involve the exception

to the warrant requirement recognized in *Carroll* v. *United States, supra,* because the police had no probable cause to believe that the automobile, as contrasted to the footlocker, contained contraband. See 433 U. S., at 11–12. This point is underscored by our decision in *Ross,* which held that notwithstanding *Chadwick* police officers may conduct a warrantless search of containers discovered in the course of a lawful vehicle search. See 456 U. S., at 810–814. Given our conclusion that the Customs officers had probable cause to believe that the pickup trucks contained contraband, *Chadwick* is simply inapposite. See 456 U. S., at 817.

Respondents further contend that the record fails to show that a vehicle search ever in fact occurred. This argument is meritless. It is true that the trucks were not searched at the scene, and the record leaves unclear whether the Customs officers thoroughly searched the trucks after they were taken to DEA headquarters. The record does show, however, that the packages were unloaded from the trucks. Thus, the Customs officers conducted a vehicle search at least to the extent of entering the trucks and removing the packages. The possibility that the officers did not search the vehicles more extensively does not affect our conclusion that the packages were removed pursuant to a vehicle search. The issue presented by this case is whether the subsequent warrantless search was unreasonable merely because it occurred three days after the packages were unloaded from the pickup trucks.

### III

Our analysis of the central issue in this case begins with our decision in *Ross.* There the Court observed that the exception to the warrant requirement recognized by *Carroll* allows a search of the same scope as could be authorized by a magistrate. 456 U. S., at 823, 825. "A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search." *Id.,* at 821. Although probable cause may not generally justify a war-

rantless search of a container, the Court noted that the protection afforded by the Fourth Amendment varies in different settings. *Id.*, at 823. "[A]n individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." *Ibid.* Cf. *South Dakota* v. *Opperman*, 428 U. S. 364, 367–368 (1976) (discussing lesser expectation of privacy in motor vehicles); *Cardwell* v. *Lewis*, 417 U. S. 583, 590–591 (1974) (plurality opinion). Consequently, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U. S., at 825.

*Ross*, as the Court of Appeals acknowledged, 707 F. 2d, at 1098, establishes that the Customs officers could have lawfully searched the packages when they were first discovered inside the trucks at the desert airstrip. Moreover, our previous decisions indicate that the officers acted permissibly by waiting until they returned to DEA headquarters before they searched the vehicles and removed their contents. See *id.*, at 1099. There is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure. *Texas* v. *White*, 423 U. S. 67, 68 (1975) *(per curiam); Chambers* v. *Maroney*, 399 U. S. 42, 52 (1970). "[T]he justification to conduct such a warrantless search does not vanish once the car has been immobilized." *Michigan* v. *Thomas*, 458 U. S. 259, 261 (1982) *(per curiam).* A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search. *Id.*, at 261–262; see also *Florida* v. *Meyers*, 466 U. S. 380 (1984) *(per curiam).*

The Court of Appeals concluded that *Ross* allows warrantless searches of containers only if the search occurs "immediately" as part of the vehicle inspection or "soon thereafter." See 707 F. 2d, at 1099. Neither *Ross* nor our other vehicle search cases suggest any such limitation. *Ross* involved the

warrantless search of two different containers. After making a roadside arrest of the driver of an automobile, police officers opened the trunk and discovered a paper bag that contained what appeared to be narcotics. *Ross, supra,* at 801. The officers took the car to police headquarters and after a more thorough search discovered a leather pouch containing currency. 456 U. S., at 801. *Ross* did not distinguish between the search of the paper bag that occurred at the scene of arrest and the later search of the leather pouch. Because the police had probable cause to search the entire vehicle, the Court concluded that the police were entitled to open the containers discovered inside without first obtaining a warrant. See *id.,* at 817. *Ross* did not suggest that this conclusion was affected by the fact that the leather pouch was not searched until after the police had impounded the vehicle or by the existence of exigent circumstances that might have made it impractical to secure a warrant for the search of the container. Instead, *Ross* indicated that the legality of the search was determined by reference to the exception to the warrant requirement recognized by *Carroll.*

*Ross,* as the Court of Appeals noted, did observe in a footnote that if police may immediately search a vehicle on the street without a warrant, "a search soon thereafter at the police station is permitted if the vehicle is impounded." 456 U. S., at 807, n. 9. When read in context, these remarks plainly do not suggest that searches of containers discovered in the course of a vehicle search are subject to temporal restrictions not applicable to the vehicle search itself. Moreover, *Ross* expressly refused to limit the application of the *Carroll* exception by requiring police officers to secure a warrant before they searched containers found inside a lawfully stopped vehicle. 456 U. S., at 821, n. 28. "The scope of a warrantless search of an automobile . . . is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may

be found." *Id.*, at 824. Consequently, the fact that a container is involved does not in itself either expand or contract the well-established exception to the warrant requirement recognized in *Carroll*. See 456 U. S., at 824.

The approach of the Court of Appeals not only lacks support in our decision in *Ross*, but it also fails to further the privacy interests protected by the Fourth Amendment. Whether respondents ever had a privacy interest in the packages reeking of marihuana is debatable. We have previously observed that certain containers may not support a reasonable expectation of privacy because their contents can be inferred from their outward appearance, *Arkansas* v. *Sanders*, 442 U. S. 753, 764–765, n. 13 (1979), and based on this rationale the Fourth Circuit has held that "plain odor" may justify a warrantless search of a container. See *United States* v. *Haley*, 669 F. 2d 201, 203–204, and n. 3, cert. denied, 457 U. S. 1117 (1982). The Ninth Circuit, however, rejected this approach, 707 F. 2d, at 1096, and the Government has not pursued this issue on appeal. We need not determine whether respondents possessed a legitimate expectation of privacy in the packages. Because the Customs officers had probable cause to believe that the pickup trucks contained contraband, any expectation of privacy in the vehicles or their contents was subject to the authority of the officers to conduct a warrantless search. See *Ross*, 456 U. S., at 823.

The warrantless search of the packages was not unreasonable merely because the Customs officers returned to Tucson and placed the packages in a DEA warehouse rather than immediately opening them. Cf. *United States* v. *Jacobsen*, 466 U. S. 109, 119–120 (1984) (no privacy interest in package that was in possession of and had been examined by private party); *Michigan* v. *Thomas, supra*, at 261. The practical effect of the opposite conclusion would only be to direct police officers to search immediately all containers that they discover in the course of a vehicle search. Cf. *Ross, supra*,

at 807, n. 9 (noting similar consequence if police could not conduct warrantless search after vehicle is impounded). This result would be of little benefit to the person whose property is searched, and where police officers are entitled to seize the container and continue to have probable cause to believe that it contains contraband, we do not think that delay in the execution of the warrantless search is necessarily unreasonable. Cf. *Cardwell* v. *Lewis*, 417 U. S., at 592–593 (impoundment and 1-day delay did not make examination of exterior of vehicle unreasonable where it could have been done on the spot); *United States* v. *Edwards*, 415 U. S. 800, 805–806 (1974) (warrantless search of suspect's clothing permissible notwithstanding delay after initial arrest).

We do not suggest that police officers may indefinitely retain possession of a vehicle and its contents before they complete a vehicle search. Cf. *Coolidge* v. *New Hampshire*, 403 U. S. 443, 523 (1971) (WHITE, J., dissenting). Nor do we foreclose the possibility that the owner of a vehicle or its contents might attempt to prove that delay in the completion of a vehicle search was unreasonable because it adversely affected a privacy or possessory interest. Cf. *United States* v. *Place*, 462 U. S. 696 (1983). We note that in this case there was probable cause to believe that the trucks contained contraband and there is no plausible argument that the object of the search could not have been concealed in the packages. Respondents do not challenge the legitimacy of the seizure of the trucks or the packages, and they never sought return of the property. Thus, respondents have not even alleged, much less proved, that the delay in the search of packages adversely affected legitimate interests protected by the Fourth Amendment. Inasmuch as the Government was entitled to seize the packages and could have searched them immediately without a warrant, we conclude that the warrantless search three days after the packages were placed in the DEA warehouse was reasonable and consistent with our

precedent involving searches of impounded vehicles. See *Florida* v. *Meyers*, 466 U. S. 380 (1984); *Michigan* v. *Thomas*, 458 U. S. 259 (1982); *Cooper* v. *California*, 386 U. S. 58, 61–62 (1967) (upholding warrantless search that took place seven days after seizure of automobile pending forfeiture proceedings).

Accordingly, the decision of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

Consistently with my disagreement with the Court in *United States* v. *Ross*, 456 U. S. 798 (1982); see *id.*, at 827 (MARSHALL, J., joined by BRENNAN, J., dissenting), I dissent from today's unwarranted extension of *Ross*. As a general rule the Fourth Amendment proscribes the warrantless search of closed packages and containers. *United States* v. *Chadwick*, 433 U. S. 1, 10–11 (1977). Even when the authorities have probable cause to believe that a container holds contraband or evidence of a crime, the Fourth Amendment generally permits no more than "seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the situation demand it . . . ." *United States* v. *Place*, 462 U. S. 696, 701 (1983). That a closed package is located within an automobile provides no reason for departing from the general rule that no more than seizure pending issuance of a warrant is constitutionally permissible. *Ross, supra*, at 831 (MARSHALL, J., dissenting) ("[T]he traditional rationales for the automobile exception plainly do not support extending it to the search of a container found inside a vehicle"). *A fortiori* a warrantless search occurring three days after seizure of a package found in an automobile violates the Fourth Amendment.

But even accepting *Ross*, I disagree with today's blithe extension of the temporal scope of a permissible search on

analogy to *Texas* v. *White*, 423 U. S. 67, 68 (1975) *(per curiam)*, and *Chambers* v. *Maroney*, 399 U. S. 42, 52 (1970). I have previously made clear why I regard these decisions as questionable. See *South Dakota* v. *Opperman*, 428 U. S. 364, 384 (1976) (MARSHALL, J., joined by BRENNAN and Stewart, JJ., dissenting); *Texas* v. *White, supra,* at 69 (MARSHALL, J., joined by BRENNAN, J., dissenting). There is simply no justification for departing from the Fourth Amendment warrant requirement under the circumstances of this case; no exigency precluded reasonable efforts to obtain a warrant prior to the search of the packages in the warehouse.

It also cannot pass without comment that the Court has addressed an issue not before us. The Court of Appeals rejected the Government's argument that the "plain odor" of marihuana emanating from the packages obviated the need for a warrant to search them, 707 F. 2d 1093, 1095–1096 (1983), and the Government has not renewed the argument here. Yet while properly noting that the "plain odor" issue is not before us, see *ante,* at 481, the Court suggests a very definite view with respect to the merits of this issue. Citing the Fourth Circuit case accepting the "plain odor" exception to the warrant requirement, *United States* v. *Haley*, 669 F. 2d 201, 203–204, and n. 3, cert. denied, 457 U. S. 1117 (1982), the Court today opines that "[w]hether respondents ever had a privacy interest in the packages reeking of marihuana is debatable." *Ante,* at 486. This is an issue which is the subject of a significant divergence of opinion in the lower courts. Compare *United States* v. *Haley, supra,* with *United States* v. *Dien*, 609 F. 2d 1038, 1045 (CA2 1979). And most importantly, today's offhand commentary contradicts this Court's only precedent on the question. See *Johnson* v. *United States*, 333 U. S. 10, 13 (1948) ("[O]dors alone do not authorize a search without warrant"). In these circumstances, surely it is improper for the Court without briefing or argument to suggest how it would resolve this important and unsettled question of law.

I dissent.