UNITED STATES of America

v.

Belton LaMont PLATT.

No. C–CR–89–52.

United States District Court,
W.D. North Carolina,
Charlotte Division.

April 20, 1990.

Robert J. Conrad, Jr., Charlotte, N.C., for plaintiff.

Lawrence W. Hewitt, Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

### I. INTRODUCTION

THIS MATTER is before the Court on Defendant's Motion, filed April 12, 1990, to Suppress Evidence. The Government filed a response to the Motion on April 12, 1990. Because the trial of this matter was scheduled to begin on April 16, 1990, the Court heard arguments from the parties following jury selection. Thereafter, the Court denied the Motion from the bench in open court. The Court has entered this written

Order to clarify its oral Order of April 16, 1990.

Defendant's Motion sought to suppress jewelry and U.S. currency that was seized during a search of the trunk of Defendant's automobile on April 10, 1989. Defendant claimed the F.B.I. agents who searched the trunk did not have Defendant's consent or probable cause to believe the trunk contained the fruits of illegal activity. The Government responded that the search was valid because the agents had probable cause to believe Defendant's automobile contained cocaine and that during the search for cocaine, the seized items were seen in plain view. Alternatively, the Government first argued that Defendant had "abandoned" the property by denying ownership; and secondly that the property was subject to civil forfeiture as proceeds from drug trafficking activity, and that such items may be seized without process by the Attorney General when probable cause exists that the property is subject to forfeiture pursuant to 21 U.S.C. § 881(b)(4).

## II. FACTUAL BACKGROUND

During the argument of the Motion and the testimony elicited during the trial from LaMorris Watson, Agent Holland, and Agent Caylor, the following Government's rendition of the facts emerged. On April 10, 1990, a cooperating witness named LaMorris Watson (hereinafter "Watson") was equipped with a transmitter and tape recorder in connection with a drug investigation of a suspect known as "Money Rock" who was later identified as Defendant Belton LaMont Platt (hereinafter "Platt"). Watson met with Platt at 7:00 p.m. in Apartment # 7, 815 Villa Court. That and subsequent conversations were monitored by F.B.I. Agents Holland and Caylor (hereinafter collectively referred to as "agents"). During the meeting, Platt agreed to sell one half kilogram of cocaine to Watson in exchange for $11,000.00. However, Platt stated that the cocaine was at another location, and that he would pick up the cocaine and deliver it to Watson at a location on Clanton Road. At the trial, Watson and both agents testified that Platt stated he would "take a risk" and transport the cocaine in his Mercedes Benz automobile. Watson and Platt then left the apartment at 7:30 p.m.

Platt and Watson met a second time at 8:45 p.m. at the intersection of Watson Avenue and West Boulevard. The conversation focused on the sale of cocaine from Platt to Watson. Watson and Platt agreed to meet later that evening on Watson Avenue to consummate the deal.

Shortly thereafter, Watson met with the agents and described Platt's car in detail. In particular, Watson stated Platt was driving a late model Mercedes Benz, dark gray in color, with a "spoiler package." Moreover, the front license plate contained the word "Rock." The agents then instructed Watson to leave the area and to await further instructions before doing anything else. The agents remained in the area and conducted covert surveillance.

At 9:25 p.m., the agents observed a Mercedes Benz matching the description provided by Watson approach the area. The agents then stopped the vehicle. A male driver, matching the description of Platt, immediately exited the vehicle, placed both hands above his head and began stating over and over again, "I'm clean. You've got nothing on me. I knew about LaMorris (Watson)." The agents advised Platt that they suspected cocaine was being transported in his car. However, Platt was advised that he was not under arrest.

The agents then conducted a brief patdown search of Platt for weapons. The agents removed a quantity of cash and a telephone pager from Platt's pants. Platt then offered to let the agents search the car. After a search of the car interior did not reveal cocaine, Agent Holland began to open the trunk. However, Platt objected and asked if a search warrant was required. The agent said that a warrant was not required and proceeded to open the trunk.

In plain view, the agents saw the jewelry and cash that are the subject of this Motion. Those items were seized, as was Defendant's car. Initially, Platt denied own-

ership of the seized items, but later did claim the cash was his. Platt also gave the agents a false name. After several minutes, Platt was permitted to leave the scene which he did on foot.

Platt's version of the facts is somewhat different. Platt and his cousin, Eric Arant, testified at trial that Watson met Platt at Apartment # 7, 815 Villa Court. However, the only discussion between the men involved the purchase of a camera. According to Platt and Arant, there was no mention of the purchase of cocaine on the evening of April 10, 1989.

Platt's testimony regarding the stop of his car by the agents was for the most part consistent with the Government's version. Platt stated that he never gave the agents permission to search his trunk.

After reviewing Defendant's Motion, the Government's response, and listening to the arguments, the Court concluded that the Government's version of the events was more credible. Moreover, the Court's judgment was later confirmed by listening to the testimony of Watson, Agent Holland, and Agent Caylor. That testimony contained an internal coherence and consistency that made the Government's version believable. On the other hand, the Court found the testimony of Platt and Arant to be self-serving, inconsistent, and unreliable.

### III. UNTIMELINESS OF THE MOTION

Rule 12(b)(3) of the Federal Rules of Criminal Procedure requires that motions to suppress evidence be raised before trial. Rule 12(c) provides that the court may set a time for the making of pretrial motions. Rule 12(f) provides that a failure by a party to raise a defense or objection in a timely manner as required by Rule 12(c) shall constitute a waiver of that claim. The court for cause shown may grant relief from the waiver.

■ In this case, Magistrate Paul B. Taylor entered an arraignment order on the Superceding Bill of Indictment on October 24, 1989. That Order stated:

4. All pretrial motions must be in writing and must be filed within fifteen (15) days from the date of this Arraignment Order. *Motions not timely filed will be summarily denied.* (emphasis added).

Because this Motion was filed after November 8, 1989 as required by the arraignment order, this Motion is untimely and must be denied unless Defendant can show cause why relief from the waiver should be granted.

Attached to Defendant's Motion is the affidavit of his counsel. The affidavit notes that Defendant's counsel did not obtain vital discovery materials until April 11, 1990. Although this material was available to Defendant's counsel well before April 11th through the Government's open file policy, the Court is aware that Defendant's counsel is the fourth lawyer in this case. Moreover, Defendant's counsel accepted the case as an appointed attorney only several weeks ago and was under serious time constraints in preparing for trial. Therefore, the Court believes Defendant has demonstrated adequate cause for relief from waiver. On that basis, the Court concludes it may consider the Motion pursuant to the grant of relief provision contained in Rule 12(f).

### IV. LEGAL CONCLUSIONS

■ The Court believes probable cause existed that cocaine was being transported by Defendant in his automobile. Because of the mobile nature of vehicles, the degree of particularity needed for a probable cause showing is less if a search and seizure of vehicle is involved than the degree of probable cause needed in the typical search warrant case. *See* LaFave, 3 *Search and Seizure*, § 7(c) at 41 (2d Ed. 1987) (hereinafter "LaFave"); *see also United States v. Gomori*, 437 F.2d 312 (4th Cir.1971) (suspicious nature of truck—overloaded springs—provided police officer with sufficient probable cause to search).

The Court believes that this case is strikingly similar to *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In the *Ross* case, the Supreme

Court relied on the automobile exception in finding the search of containers found in an automobile was reasonable under the Fourth Amendment where probable cause existed to believe the automobile contained contraband. *Id.* 456 U.S. at 806–09, 102 S.Ct. at 2163–64; *see also Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Just as in the case at hand, the police in *Ross* relied on information supplied by a confidential informant. *Id.* 456 U.S. at 800, 102 S.Ct. at 2160. In addition, the officers in *Ross* also conducted a warrantless search of the entire automobile including the trunk, and incriminating evidence was seized. *Id.* at 801, 102 S.Ct. at 2160.

■■■ The *Ross* case stands for the proposition that when the police have probable cause to believe a vehicle may contain contraband that it is reasonable under the Fourth Amendment to conduct a warrantless search of any portion of the vehicle where that contraband may reasonably be located.

> When a legitimate search is under way, and when its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand. *Id.* at 821, 102 S.Ct. at 2170.

Thus, if the police reasonably believe an automobile contains cocaine, and that belief is supported by probable cause, the police may conduct a warrantless search of the entire vehicle including the trunk and other containers because it is foreseeable that the cocaine could be hidden virtually anywhere in the vehicle. *Id.* at 820, 102 S.Ct. at 2170; *see also generally Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985).

The Court believes the record in this case is replete with probable cause. First, Watson testified that Defendant intended to deliver cocaine in his automobile to the intersection of Watson Avenue and West Boulevard. Second, the F.B.I. agents monitored all conversations between Watson and Defendant and corroborated Watson's testimony. Third, Watson gave the F.B.I. agents a detailed description of Defendant's vehicle. Fourth, the agents observed the vehicle approach the location where the cocaine was to be delivered. Fifth, a person matching Defendant's description exited a vehicle that was similar to the one described by Watson, and upon exiting, that person acted in a suspicious and defensive manner including mentioning that, "He knew about LaMorris (Watson)".

When this information is considered as a whole, the Court believes the agents had ample probable cause to seize the vehicle and conduct a search. Moreover, it was entirely reasonable for the agents to believe that the cocaine might be located in the trunk; thus, justifying the search of the trunk.

■■ When a police officer makes an initial intrusion in a constitutionally proscribed manner, any incriminating evidence in plain view may be seized. *See generally Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The plain view exception is not limited to the seizure of evidence that is fruit of an illegal activity on its face, but is also applicable to evidence that is otherwise legal. *See Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) (holding that proof of similar acts discovered during search not suppressible). For example, the Supreme Court in *Texas v. Brown* held that the plain view observation of balloons (commonly used as a container for narcotics) and the subsequent seizure of those balloons was reasonable even though balloons are not per se illegal.

In this case, the Court believes that the officers were in a lawful position to make a plain view observation of the jewelry and cash located in the trunk of Defendant's car. It was reasonable for the agents to

seize what might be evidence of Defendant's drug dealing activities. *See United States v. Grandison,* 783 F.2d 1152, 1156 (4th Cir.), *cert. denied,* 479 U.S. 845, 107 S.Ct. 160, 93 L.Ed.2d 99 (1986); *United States v. Reed,* 726 F.2d 339, 343–44 (7th Cir.1984); *United States v. Jefferson,* 714 F.2d 689, 694–95 (7th Cir.1983). Thus, the Court concludes that the plain view exception allowed the agents to seize the jewelry and cash found in the trunk of Defendant's car.

The Court does not believe it is necessary to address the Government's alternative arguments in light of its finding that the seizure was proper.

NOW, THEREFORE, IT IS ORDERED that Defendant's Motion to Suppress Evidence be, and hereby is, DENIED.

The Clerk is directed to certify copies of this Order to Defendant, defense counsel, and the United States Attorney.