JAMES H. FAULKNER, Retired Justice.
Marshall Presha Pinkney was indicted for the offense of trafficking in cocaine, in violation of § 13A-12-231, Code of Alabama 1975. He entered a guilty plea on that indictment, was allowed to withdraw his plea, and was subsequently re-indicted on the same charge. The jury found Pink-ney guilty as charged in the indictment, and he was sentenced to 15 years’ imprisonment and was fined $250,000. Five issues are raised on appeal.
I.
Pinkney contends that the trial court erred in overruling his motion to suppress the evidence seized pursuant to the search warrant because, he says, the affidavit that was the basis for the warrant was defective.
The affidavit submitted to the magistrate by Officer Rex Reynolds of the Huntsville Police Department stated as follows:
“Comes Rex Reynolds, an Officer of the law of the State of Alabama, now holding the position of Sergeant, with the: ... Huntsville Police Dept., before the Honorable Judge James R. Sturdivant, of the Municipal Court of the City of Huntsville, Madison County, Alabama; and being duly sworn, on oath deposes and says that he is informed and believes and upon such information and belief verily states that the statement of facts presented to the Court, as probable cause for the issuance of a ... Search Warrant; ... at any time of the day or night, are true and correct:
[[Image here]]
*11 “I have been personally informed by a reliable and confidential informer that certain personal property, more particularly described as follows, to-wit: cocaine is concealed in or about the dwelling, house, mobile home, or apartment or other building or premises or privately owned vehicle of: ‘Marshall’ or Occie Maddox Jr. located at: 102 #A1 Winchester Rd — Regency Apts[.,] Huntsville, Madison County, Alabama, or which said vehicle is described as: 1987 Nissan Sen-tra Gray 2D 1CE2797[.] I further depose and say that the reason for my belief that the above information is reliable and for my belief in the reliability of the aforementioned informer are as follows: On this date, this agent has vari-fied [sic] intelligence which was derived from previous investigations involving B/M known only as ‘Marshall’ Intelligence shows that the above subject is now in the possession of a quantity of cocaine and may be concealed in Apt. 102 of Regency Apts, and/or in the vehicle described as a 1987 Nissan Sentra Gray 2D-1CE279 [sic]. The informant himself has seen the cocaine at the above listed locations within the past twenty-four hours prior to this AFFIDAVIT. The informant used in this case has given agents reliable information in the past and such information has led to the arrest and conviction of known drug dealers in the Huntsville and Madison County Area. Affiant further believes that the aforesaid personal property, goods, wares or merchandise is concealed or held illegally, by the aforementioned owner or person in possession of the above premises, due to the following facts, that said property:
[[Image here]]
“... is now on said premises in the possession of a person or persons with the intent to use it as a means of committing a public offense, ...”
Initially, Pinkney contends that the statement in the affidavit, “varified [sic] intelligence which was derived from previous investigations” referred to prior intelligence that was discovered by Reynolds through another law enforcement source and that because Reynolds denied using sources other than the informant in preparing his affidavit, this statement in the affidavit is false. We disagree.
At the suppression hearing, the prosecutor asked Officer Reynolds the following questions:
“Q. Rex, I have asked you twice now today, but if you will just give us a brief overview of the information that led up to you getting the warrant.
“A. I believe that what he was trying to get into was prior intelligence. I’m going into the direct intelligence I received just prior to obtaining the warrant.
“Q. That’s fine.
“A. I had actual positive knowledge through a reliable informant known to me as W.B.M. that he had in fact seen a quantity of several kilos of Cocaine inside the residence located at 102 A-l Winchester Road, which is Regency Apartments.
[[Image here]]
“Q. So, Rex, go ahead and tell us what information that [W.] B.M. provided to you on this occasion.
“A. The information given at that time was on a black male only known to me as Marshall.
“There is prior intelligence that was discovered by myself through another law enforcement source. This was not used in this Affidavit.
“The information used in this Affidavit was specifically that that reliable informant had been inside that residence at 102 A-l Winchester Road, and there had met with a black male known to me as Marshall, and known to the informant as Marshall.
“At that time through a series of two or three different transactions there at that apartment with Marshall, the informant had seen a large quantity of Cocaine described to me as ‘several kilos’— was the direct quote given to me — ‘of Cocaine.’
“Q. And he indicated to you that he had seen it?
*12 “A. Yes, sir.
“Q. Was anybody with him that had seen it also that conveyed this to you?
“MR. BUTLER [defense counsel]: Objection, Judge; hearsay.
“THE COURT: Overruled.
“A. Yes, there was. There was another individual in the car during the third event where they were met at the apartment, and his name is known to me as B.T.
“Q. And B.T. was in that apartment with [W.] B.M. and saw the Cocaine in possession of Marshall?
“A. That’s correct, he was.
“Q. Okay, Rex, after you received this information, is it not a fact that you went to Judge Sturdivant to get a warrant?
“A. Yes, I did. While we were still within a half a block of the apartment there, the information that was given to me was basically that the kilos of Cocaine was inside of a blue satchel, large blue satchel.”
When Reynolds’s testimony is compared with the language of the affidavit, the phrase “varified [sic] intelligence which was derived from previous investigations” could easily refer to intelligence which Reynolds received 1) from his confidential informant W.B.M. on the two prior transactions that occurred between the informant and Pinkney at the subject apartment and 2) from B.T., a second informant, who was present at the subject apartment on the third transaction between W.B.M. and Pinkney and who observed the cocaine in Pinkney’s possession.
Hence, because Pinkney failed to meet his burden of proving that the affidavit contained a material and false statement made knowingly and intentionally or in reckless disregard for the truth, the trial court’s decision to overrule the motion to suppress on this ground was proper. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); Calhoun v. State, 460 So.2d 268 (Ala.Cr.App.1984).
The other portion of the affidavit which Pinkney attacks is the statement that his informant had seen the cocaine at the “above listed locations”, viz., the apartment and the car, within 24 hours prior to the issuance of the warrant. Pinkney now claims that because the bag that contained the cocaine was seen by the informant only in the apartment and not in the car, the statement was false.
Although it is true that Reynolds testified that his informant, W.B.M., had only seen the kilos of cocaine in a blue satchel in the subject apartment, no warrant was necessary to search Pinkney’s car under the “probable cause coupled with exigent circumstances” exception to the warrant requirement. During the three transactions between the informant and Pinkney on the day in question, police officers were surveilling Pinkney’s apartment and his car, which was parked outside the subject apartment. The undercover officers observed Pinkney remove a blue satchel from the trunk of his car and take the satchel into the apartment before his third meeting with W.B.M. The officers were then informed by W.B.M. that the blue satchel contained kilos of cocaine. The officers then observed Pinkney take the blue satchel out of the subject apartment after W.B.M. and B.T. left and lock the satchel in the trunk of the subject car. Where there is probable cause to believe that a vehicle contains contraband, exigent circumstances warrant a search of that vehicle. Dale v. State, 466 So.2d 196 (Ala.Cr.App.1985).
“[A]n individual’s expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband.” United States v. Ross, 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982). “The scope of a warrantless search of an automobile ... is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found.” Id., at 824, 102 S.Ct. at 2172. “If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may con *13 ceal the object of the search.” Id., at 825, 102 S.Ct. at 2173. See also United States v. Johns, 469 U.S. 478, 486, 105 S.Ct. 881, 886, 83 L.Ed.2d 890 (1985). (“Because the Customs officers had probable cause to believe that the pickup trucks contained contraband, any expectation of privacy in the vehicles or their contents was subject to the authority of the officers to conduct a warrantless search.”)
Moreover, even if that portion of the affidavit pertaining to the car were deleted, sufficient probable cause still existed to support the warrant for the apartment based upon information obtained from the reliable informant who saw the cocaine inside the apartment. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Hence, the trial court properly overruled Pinkney’s motion to suppress on this ground also.
II.
Pinkney contends that the trial court erred in overruling his objection to the composition of the jury venire, which contained only 1 black out of 26 jurors and which was allegedly not representative of a cross-section of the community.
The record is silent as to how the jury venire was selected. This court has said, moreover, that there is “no requirement of law that juries mirror a community or reflect various distinctive groups in the population.” Rogers v. State, 555 So.2d 1168, 1169 (Ala.Cr.App.1989).
Hence, based upon the record before us, the trial court did not err in overruling Pinkney’s objection to the composition of the jury venire.
III.
Pinkney contends that in several instances the trial court’s conduct toward defense counsel resulted in an unfair trial.
The first instance concerned a curative instruction given to the jury after defense counsel had made an improper argument in his opening statement to the jury. Specifically, defense counsel, who was instructed not to argue about the search warrant and affidavit, argued about these subjects despite continued objections by the prosecutor and the admonishment of the court. The argument, which involved a matter of law already decided by the court, was improper argument for the jury, and the admonishment was necessary and correct.
The second instance involved a lecture by the court to defense counsel outside the presence of the jury wherein defense counsel was told not to cross-examine the state’s witness during the case-in-chief on prior testimony the witness had given at the suppression hearing held before the jury was selected. The court’s statements to defense counsel were not made in front of the jury, and Pinkney cannot be said to have been prejudiced by them. Jones v. State, 392 So.2d 1270 (Ala.Cr.App.1980), cert. denied, 392 So.2d 1273 (Ala.1981).
The final instance about which Pink-ney complains is an admonishment by the court for the people in the courtroom who were laughing at a defense witness to treat this case seriously:
“THE COURT: All right. I’m going to interrupt these proceedings and say this: These proceedings are not being held here today for anyone’s entertainment. This is a serious proceeding. It’s serious on behalf of the State of Alabama, and as soon as the Defendant starts acting serious at the table, we’ll assume that it’s serious on his behalf.
“Now, then, if everyone continues to laugh and giggle at this particular witness, I’m going to have the courtroom cleared of everyone but the jury. Is that understood?”
Defense counsel failed to object at trial to this third admonishment by the court, and the issue has not been preserved for appeal. Maul v. State, 531 So.2d 35 (Ala.Cr.App.1987).
We note that had this third instance been properly preserved for appeal, the court’s lengthy cautionary instruction to the jury sufficiently eliminated any taint of prejudice that the conduct and comments of the judge may have created. Ex parte Lokos, 434 So.2d 831 (Ala.1983).
*14 IV.
Pinkney contends for the first time on appeal that his trial counsel rendered ineffective assistance of counsel.
An adverse ruling is a preliminary requirement to preservation of error for appellate review. Trawick v. State, 431 So.2d 574 (Ala.Cr.App.1983).
Here the trial court was never presented with an opportunity to rule on the issue of ineffective assistance of counsel. The proper procedure would have been to raise the issue in the form of a motion for new trial. A.R.Cr.P.Temp. 13. Absent that motion, there is no adverse ruling from which to appeal.
V.
Pinkney contends that the trial court erred in denying his attempt to introduce an affidavit of the informant W.B.M., who was unavailable for trial.
Arguments not based on any legal authority have the same effect as if no argument had been made, and the argument will not be considered.
We note that had this issue been properly preserved for appeal, “[a]s a general rule, an affidavit is not admissible for the purpose of proving the truth of the matter stated in it because the affidavit is hearsay since the declarant is not present and not subject to cross-examination by the opposing party.” C. Gamble, McElroy’s Alabama Evidence § 260.01 (4th ed. 1991). The proper procedure when a witness is unavailable is the use of the witness’s former testimony, which must have been given before a tribunal or officer with the legal authority to take sworn testimony and which affords an opportunity for cross-examination. McElroy’s Alabama Evidence § 245.07.
The judgment of the circuit court is affirmed.
The foregoing opinion was prepared by JAMES H. FAULKNER, Retired Justice, Supreme Court of Alabama, serving as a judge of this court, and his opinion is adopted as that of this court.
AFFIRMED.
All Judges concur.