**UNITED STATES of America**

v.

**Daryl WYCHE.**

**Crim. No. L–94–0487.**

United States District Court,
D. Maryland.

May 5, 1995.

■■■■■■■■■■■■■■■■

Lynne A. Battaglia, United States Attorney, and Jamie M. Bennett, Baltimore, MD, Assistant United States Attorney, for plaintiff.

Stanley H. Needleman, Baltimore, MD, for defendant.

## MEMORANDUM AND ORDER

LEGG, District Judge.

On March 31, 1995, this Court held a hearing on defendant's motion to suppress evidence and motion to exclude 404(b) evidence. For the reasons given below, these motions are denied.

■ The motion to exclude 404(b) evidence is easily disposed of because the government represented at the hearing that it would not seek to introduce any such evidence against Wyche at trial. The motion is, therefore, denied as moot.

As to the motion to suppress, several exhibits were introduced at the hearing, and one witness, Detective Richard Petrie, of the Baltimore City Homicide Unit, testified. Based upon the evidence presented at the hearing and on the papers submitted, the Court makes the following findings of fact.

## I. FACTS

On December 3, 1994, Joe Wright was murdered outside a store, located on North Charles Street. The details of the murder are particularly vivid. Wright was sitting in the driver's seat of a gold BMW, which is owned by the defendant in this case, Daryl Wyche. A gunman, as yet unidentified, opened fire from a second story window; the fusillade shattered most of the BMW's windows, riddling Wright's body. Wright made some effort to defend himself. The police found a fully automatic Mac–1 near Wright's hand.

The police arrived, cordoned off the crime scene, and summoned a mobile crime unit. After Wright's body had been removed, the mobile unit conducted an initial forensic investigation. The BMW was then towed to the crime lab processing area (a specially equipped secure area) in the garage at Baltimore City Police Headquarters. The forensic team began to process the car the next day, December 4, 1994.

On the night of the murder, Det. Petrie was assigned to the case. On December 4, 1994, at approximately 2:00 pm, Petrie received a call, informing him that the forensic unit was finished with the car.[1]

As Petrie testified, the car could not be towed from the secure area to the police impoundment lot until he signed a release. Shortly after 2:00 pm, Petrie visited the car to conduct a final search.

Petrie had two reasons for his search. First, as the lead detective, Petrie was "going over" the car personally to see if the forensic team had "missed anything." Second, because the car was being impounded, he was conducting an inventory search to determine whether there was anything of value left in the car. If so, he would log the items on an evidence form and place them in the evidence locker.

During the search, Petrie pulled down the armrest in the backseat of the car, and discovered a 9 mm glock pistol. Wyche, a twice convicted felon, is being charged with possession of this gun, in violation of 18 U.S.C. § 922(g).[2]

At the hearing, Detective Petrie testified, on cross-examination, to the following:

(i) He had no probable cause to believe that there was a gun in the BMW;

(ii) Daryl Wyche did not consent to the search of the BMW;

(iii) Because the car was in a secure area, there were no "exigent circumstances" at the time of the search;

(iv) He is not, himself, specially trained in forensics;

---

1. The inspection was apparently thorough and involved cutting off the roof of the car.

2. Wyche has a prior conviction for murder in 1990 and a 1991 conviction for possession with intent to distribute a controlled dangerous substance.

(v) He had not secured a search and/or seizure warrant for the automobile;

(vi) Because of where it was located, the 9 mm handgun was not in "plain view";

(vii) He had time to approach a magistrate for a warrant prior to searching the car; and

(viii) The search was not incident to an arrest of defendant Wyche, who was not placed under arrest prior to the search of the car.

## II. *ANALYSIS*

■ During oral argument, Wyche's counsel conceded that the police were constitutionally authorized, absent a warrant, to seize the BMW and tow it to police headquarters. At the time the vehicle was taken into custody, it was not only mobile, but it was itself evidence of the murder of Joe Wright and it contained other evidence concerning the murder.[3] Wyche argues, however, that once the specialist had notified Petrie that forensics was finished, Petrie could not further search the car without first obtaining a warrant.

Wyche contends that Petrie was not conducting a true inventory search, but, after the fact, had seized upon the inventory exception to the warrant requirement to justify an otherwise illegal search. In support of this argument, Wyche points to Baltimore City Police Department General Order 4-91, which requires an officer, when conducting an inventory search of a motor vehicle, to list everything in the motor vehicle to safeguard the property of the owner of the vehicle and to protect the police department against claims of property loss. Petrie testified that he only intended to inventory those things of value rather than everything in the car.[4]

■ For the purpose of this motion, the Court need not determine whether Petrie's search of the BMW sufficiently complied with the requirements of General Order 4-91 to qualify under the inventory search exception to the warrant requirement.[5] The Court has determined that it was objectively reasonable for Petrie to conduct a search of the vehicle. His motivations for doing so, therefore, are constitutionally irrelevant. *United States v. Newbourn,* 600 F.2d 452, 454-55 (4th Cir.1979); *See also Scott v. United States,* 436 U.S. 128, 137, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978).

■ When the police have probable cause to believe that a vehicle contains the fruits, instrumentalities, or evidence of a crime, they may search the vehicle without a warrant. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *United States v. Ross,* 456 U.S. 798, 809, 102 S.Ct. 2157, 2164-65, 72 L.Ed.2d 572 (1982); *United States v. Whitley,* 734 F.2d 994, 998 (4th Cir.1984), *cert. denied,* 474 U.S. 873, 106 S.Ct. 196, 88 L.Ed.2d 164 (1985). In this case, the BMW not only contained evidence of a murder, but it was itself evidence. Thus, the police had the right to inspect the vehicle on the scene, take it to headquarters, and inspect it for a reasonable amount of time. In fact, the defendant concedes this point. The defendant contends, however, that the constitutional line was crossed when the forensic team notified Petrie that they were through and requested Petrie to release the car. After this point, Wyche contends, Petrie was obliged to obtain a search warrant, which would permit him to inspect the vehicle further.

In support of his argument, Wyche points to no case which stands squarely for this proposition. Rather, his argument is an extrapolation from the Supreme Court's holding in *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). After an undercover agent was gunned down in Mincey's apartment, the Arizona homicide detec-

---

**3.** The BMW contained evidence of obvious and basic utility including expended bullets and blood. A police investigator would also wish to examine the car (including the contents of the glove compartment and trunk) for evidence that might establish the motive for the crime and the identity of Wright's assailant.

**4.** Wyche offered no evidence that a specialized form for conducting inventories exists in the Baltimore City Police Department.

**5.** In order to qualify under the inventory exception, the search must be conducted pursuant to standard police procedures. *United States v. Marshall,* 986 F.2d 1171, 1175 (8th Cir.1993).

tives conducted a four day, warrantless, top-to-bottom search of the entire residence. Although the Arizona authorities sought to justify the extended search on a "crime scene" theory, the Supreme Court ruled that suppression of all of the evidence (approximately 200 objects mostly relating to drug trafficking) was constitutionally required.

*Mincey*, however, cannot be stretched to cover the facts of the present case. It is well settled that an individual has a lesser expectation of privacy in an automobile than he would in a residence. *South Dakota v. Opperman*, 428 U.S. 364, 367–68, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1975); *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981–82, 26 L.Ed.2d 419 (1970); *Carroll*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; *Newbourn*, 600 F.2d at 454. "[A]nyone who drives a vehicle upon the public streets and highways surrenders a substantial expectation of privacy." *Newbourn*, 600 F.2d at 455.[6]

Thus, it is clear that where police have probable cause to believe a vehicle contains the fruits, instrumentalities, or evidence of a crime, they may search the vehicle without a warrant. *See e.g. Carroll*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. Moreover, the Supreme Court has held that the police's right to search, when supported by probable cause, does not disappear purely because of the passage of time. *United States v. Johns*, 469 U.S. 478, 483, 105 S.Ct. 881, 884–85, 83 L.Ed.2d 890 (1984); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (warrantless search of vehicle after arrest of defendant and impoundment of vehicle was permissible). "There is no requirement that the warrantless search of a vehicle occur contemporaneous with its lawful seizure." *Johns*, 469 U.S. at 484, 105 S.Ct. at 885 (citing *Texas v. White*, 423 U.S. 67, 68, 96

S.Ct. 304, 305, 46 L.Ed.2d 209 (1975); *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981–82, 26 L.Ed.2d 419 (1970)). "The justification to conduct such a warrantless search does not vanish once the car has been immobilized." *Johns*, 469 U.S. at 484, 105 S.Ct. at 885 (quoting *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 3080–81, 73 L.Ed.2d 750 (1982) (per curiam)).

In *United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985), the Supreme Court upheld a warrantless search of two packages found in a truck three days after the police had seized the truck. The Court concluded that the warrantless search was not unreasonable merely because the officers delayed opening the packages found in the truck rather than opening them immediately. The Court held:

> The practical effect of the opposite conclusion would only be to direct police officers to search immediately all containers that they discover in the course of a vehicle search ... This result would be of little benefit to the person whose property is searched, and where police officers are entitled to seize the container and continue to have probable cause to believe that it contains contraband, we do not think that delay in the execution of the warrantless search is necessarily unreasonable ...
>
> We do not suggest that police officers may indefinitely retain possession of a vehicle and its contents before they complete a vehicle search ... Nor do we foreclose the possibility that the owner of a vehicle or its contents might attempt to prove that delay in the completion of a vehicle search was unreasonable because it adversely affected a privacy or possessory interest.

*Id.*

It must also be borne in mind that Wyche, who was aware that his car had been im-

---

6. Additionally, the *Mincey* court was apparently troubled by the duration of the warrantless search. In the present case, the forensic team was finished by approximately 2 pm, the day following the murder. Petrie merely gave the vehicle a "once over" shortly thereafter. Thus, the duration of the search was not unreasonable. It makes little sense for the Court to hold that the 9mm pistol would have been legally seized had it been discovered by the forensic team at 1:55 pm, but must be suppressed because it was discovered by Detective Petrie at approximately 2:00 pm.

The Supreme Court also appeared concerned in *Mincey* that the Arizona authorities, while under the rationale of investigating the circumstances of the murder, were, in actuality, combing Mincey's house from top to bottom for evidence of drug dealing. Such a concern is not present in the instant case. There has been no evidence that Det. Petrie was searching for anything but evidence relating to Joe Wright's murder.

pounded, never requested the police to call off the search, secure a warrant, or return the vehicle to him. *See* LaFave, *Search and Seizure*, § 7.5(c).

As the homicide detective in charge of the case, Petrie had a right to search the car himself. In fact, it appears to this Court that Petrie might have been faulted for failing to give the car a "once over" to make sure the forensic team did not miss anything. The search was supported by probable cause, was reasonable in time and in scope, and comported with the guarantees secured Wyche by the United States Constitution.

Thus, this Court finds that Detective Petrie did not infringe upon Mr. Wyche's constitutional rights when he personally searched the BMW. The Court, therefore, denies Wyche's motion to suppress the 9 mm glock pistol.

IT IS SO ORDERED.

Thomas P. Kelly, Theodore Flerlage, R. Bruce McElhone, and Andrew M. Cantor, Baltimore, Maryland, for plaintiffs.