UNITED STATES of America

v.

Robert TERRERO, et al.

Crim. No. L–95–0235.

United States District Court,
D. Maryland.

Dec. 8, 1995.

Lynne A. Battaglia, United States Attorney, and Robert A. Harding, and Jamie M. Bennett, Assistant United States Attorneys, Baltimore, Maryland, for the Government.

Kenneth W. Ravenell, Baltimore, Maryland, for defendant Jose Rosado.

## MEMORANDUM

LEGG, District Judge.

Before the Court is defendant Jose Rosado's motion to suppress physical evidence. On November 15 and 16, 1995, the Court held evidentiary hearings on defendant's motion.[1] During the hearing, Special Agents Wilbert Plummer and James O'Connor of the

---

1. Rosado's motion was heard as part of a two day joint hearing in *United States v. Jones, et al.,* Criminal No. L–95–0234 and *United States v. Terrero, et al.,* Criminal No. L–95–0235.

Drug Enforcement Agency ("DEA") testified on behalf of the Government. Rosado neither testified [2] nor called any witnesses. [3] For the reasons set forth below, the Court will deny defendant's motion by separate Order.

## I. STATEMENT OF FACTS

In June 1995, Craig Bydume was working as a confidential informant for the DEA. Bydume was providing information concerning drug activity in and around Baltimore City. He was also working in an undercover capacity arranging drugs purchases. Special Agent Plummer testified, without contradiction, that Bydume was a very reliable informant.

On June 6, 1995, while working in his undercover capacity, Bydume arranged a meeting, in a downtown Baltimore mall and hotel, with defendants Jose Rosado and Robert Terrero. Following the meeting, Bydume informed Special Agent Plummer that Terrero had identified Rosado, whom Terrero referred to as "Dave," as a source of heroin from New York City. Speaking for Rosado and himself, Terrero agreed to transport and deliver to Bydume a half kilogram quantity of heroin. [4] Through surveillance, DEA agents, including Special Agents O'Connor and Plummer, verified that the meeting took place.

On June 12, Bydume reported to Special Agent Plummer that he had received a phone call from Terrero. Terrero was traveling en route from New York City to the Sandlewood Apartments in suburban Baltimore, where Bydume had rented an apartment as a meeting place (the "Apartment").

On the evening of June 12th, DEA agents, including Special Agents Plummer and O'Connor, staked out the Apartment. Bydume, stationed in the Apartment, was wired with a Kel transmitter, which Special Agent Plummer was monitoring.

Around midnight, DEA agents observed two men and a woman arrive in a black Jeep Cherokee. These individuals were subsequently identified as Terrero, Rosado, and Terrero's wife, Nancy Rivera. Terrero got out of the Jeep, entered the apartment building, and approached the Apartment. When Terrero entered the Apartment, Bydume was talking to Special Agent Plummer on a cellular phone. As part of the deception, Bydume told Terrero that he was on the phone to his financial backer, who would fund the deal if the drugs were satisfactory. Special Agent Plummer was able to monitor Bydume's meeting with Terrero both through the Kel transmitter and the open cellular phone line.

After briefly meeting with Bydume, Terrero returned to the Jeep to retrieve the heroin for Bydume to inspect. DEA agents observed Terrero leave the apartment building and enter the Jeep. The Jeep drove closer to the building. Terrero left the car and once again entered the Apartment. Terrero showed Bydume the heroin. Bydume and Terrero arranged to rendezvous at a Popeye's restaurant, where the exchange of drugs and money would take place. After Terrero left the Apartment, Bydume called Special Agent Plummer to say that Terrero had left with the heroin in his pants.

The DEA agents observed Terrero leave the apartment building, for a second time, and drive off in the Jeep. DEA agents and Baltimore County Police followed the Jeep. When the car began to be driven evasively, Special Agent Plummer ordered the Baltimore County Police to stop the Jeep. [5]

The police arrested Terrero, Rosado (the owner of the Jeep), and Nancy Rivera. The Baltimore County Police conducted a cursory search at the time of the arrest which included the use of a trained dog. Neither the

---

**2.** Defendant, after having been advised of his right to testify, elected not to take the stand.

**3.** The Court granted defendant's motion to produce Craig Bydume, the Government's confidential informant, as a witness at the hearing. After considering the matter, defendant elected not to call Bydume as a witness.

**4.** Although Terrero is bi-lingual, Bydume speaks only English and Rosado speaks only Spanish. During the meeting, Terrero acted as an interpreter.

**5.** Prior to June 12, 1995, Terrero had been indicted by a grand jury and there was an outstanding warrant for his arrest.

police nor their dog discovered the heroin either on the occupants or in the vehicle.

The Baltimore County Police impounded the Jeep and moved it to the Garrison precinct station. The following morning, eight hours later, the police searched the Jeep a second time both manually and with a trained dog.[6] Again no drugs were uncovered. It was only after a third search that the heroin was discovered in a secret compartment in the Jeep.[7]

## II. *DISCUSSION*

 Fundamental to any review of a warrantless search is the principle that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The Government bears the burden of proving that such a search is lawful. *See Welsh v. Wisconsin,* 466 U.S. 740, 750, 104 S.Ct. 2091, 2097–98, 80 L.Ed.2d 732 (1984).

The Government argues that the Baltimore County Police had probable cause, based on their belief that Terrero possessed heroin, to stop the Jeep and search the car and its occupants. In order to determine the legality of the police's actions, the Court must examine: i) whether the police had probable cause to believe that Terrero had left the Apartment with the heroin on him; ii) whether the police had probable cause to search the Jeep after they did not find heroin on Terrero's person; and iii) whether the police were obligated to obtain a search warrant prior to searching the Jeep at the Garrison precinct station.

### A. *Terrero's Possession of the Heroin*

Rosado originally contended that the police had no probable cause to believe that Terre-

ro had returned to the Jeep with the heroin. Rosado abandoned this argument during colloquy with the Court at the end of the second day of the hearing.

 Indeed it is uncontrovertible that the DEA agents had probable cause to believe that Terrero possessed heroin when he left the Apartment. Bydume, a confidential informant of proven reliability, told Special Agent Plummer that Terrero had returned to the Jeep with the drugs in his pants. Through surveillance and Special Agent Plummer's monitoring of the meeting, the DEA had ample corroboration of many important aspects of Bydume's story. Thus, they had probable cause to stop the Jeep and search Terrero for drugs.

### B. *Warrantless Search of the Jeep*

Relying on *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), defendant argued that the police had no probable cause to search anywhere in the car except Terrero's pants. In *Acevedo,* a suspect left a house with a brown paper bag that the police had probable cause to believe contained marijuana. Prior to stopping the suspect's car, the police observed him place the bag in the trunk. As part of the holding, the Supreme Court stated that "the police did not have probable cause to believe that contraband was hidden in any other part of the automobile and a search of the entire vehicle would have been without probable cause." *Id.* at 580, 111 S.Ct. at 1991.

Rosado contends that under *Acevedo,* Bydume's statement that the heroin was in Terrero's pants provided the police probable cause to search only Terrero but not the Jeep. Once no drugs were found on his person or during the original sweep of the car, the police lacked probable cause to search the rest of the car. Thus, defendant argues, the searches subsequent to the im-

---

**6.** The record is unclear as to whether a second dog search took place. Rosado asserted that a second dog was used and the government did not dispute this assertion. For the purposes of Rosado's motion to suppress, the Court will assume that two dog searches were conducted on the car.

**7.** The DEA knew of Terrero's penchant for the use of secret compartments from Bydume and through a previous seizure of drugs found in a car owned by Terrero.

pounding of the car were unlawful and all evidence seized thereby should be suppressed.

 Defendant's reliance on *Acevedo* is misplaced. The police may search any "container" in which they reasonably believe drugs may be found.[8] In *Acevedo*, the police saw the suspect leave the drug dealer's home with a suspicious paper bag. Thus, they had probable cause to search the container (ie. the bag) in which they reasonably believed drugs would be located.

In the present case, the drugs were located in Terrero's pocket when he left the Apartment. Upon Terrero's arrest, however, the drugs were not on his person. Because Terrero was arrested in the course of transporting the heroin to a buyer, it was reasonable for the police to believe that Terrero had secreted the drugs to somewhere in the car.[9] Under *Acevedo*, the Jeep was the "container" that the police had probable cause to search.[10] Thus, the Court finds that the DEA and police were constitutionally permitted to search the entire Jeep including any secret compartments.

### C. *The Garrison Precinct Station Search*

Finally, Rosado argued that the search of his Jeep at the Garrison precinct station was unlawful because the police failed to obtain a search warrant. Although the car had been in the police's possession for over eight hours, the Court rejects this argument.

"[I]f the police have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct either an immediate or delayed search of the vehi-

cle." *Acevedo*, 500 U.S. at 570, 111 S.Ct. at 1986 (citing *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)); *United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985). The Fourth Circuit has specifically addressed the issue of a delayed search and held that "the passage of time between the seizure and the search of [a] car is legally irrelevant." *United States v. Gastiaburo*, 16 F.3d 582, 587, *cert. denied*, ─── U.S. ───, 115 S.Ct. 102, 130 L.Ed.2d 50 (1994).

The passage of time in an extreme case may require the police to procure a warrant despite the existence of probable cause. This is not such a case. Thus, the search at police's station of Rosado's Jeep was legally permissible.

### III. *CONCLUSION*

For these reasons, the defendant's motion to suppress the physical evidence discovered in his vehicle will be denied by separate Order.

---

8. Once a car is lawfully stopped, a search is justified "of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982).

> The scope of a warrantless search of an automobile ... is not defined by the nature of the container in which the contraband in secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found.

*Id.* at 824, 102 S.Ct. at 2172–73.

9. It is no secret that drug dealers are ingenious in finding hiding places for narcotics. Police frequently locate specially constructed "drug stashes" in automobiles.

10. There was no evidence that Terrero threw the drugs from the Jeep or stashed them on the grounds of the apartment building. Because Terrero thought that he would be meeting Bydume's financial backer at the restaurant, it was logical for the police to assume that the drugs were either on Terrero's person or hidden in the car.