**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00307-CR
NO. 09-21-00308-CR
NO. 09-21-00309-CR
NO. 09-21-00310-CR

_____

RALPH WILLIAM GALLAGHER, Appellant

V.

THE STATE OF TEXAS, Appellee

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause Nos. 20-07-08653-CR, 20-07-08704-CR, 21-08-10997-CR,**
**21-08-10998-CR**

**MEMORANDUM OPINION**

A jury convicted Ralph William Gallagher of two counts of indecency with a

child, M.C.[1] The jury also convicted Gallagher of one count of possession of child

---

[1]We use initials to refer to the alleged victims, minor children, and pseudonyms to refer to the child's family members. *See* Tex. Const. art. 1, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal judicial process").

1

pornography and one count of sexual performance by a child, both offenses against, L.C. The indecency with a child indictments each included an enhancement for a prior out-of-state sexual exploitation of a minor conviction. The jury found the enhancements true and assessed punishment of life on each indecency with a child count, life for the sexual performance of a child offense, and ten years for the possession of child pornography offense. The State moved to cumulate the sentences, which the trial court granted. In one issue, Gallagher complains the trial court erred by denying his Motion to Suppress the seizure of his cell phone. As discussed below, we will affirm the trial court's judgments.

## PERTINENT BACKGROUND

Bonnie Crump and Gallagher began interacting online for their work reviewing books. In 2014, they met in person at a book convention. Following a serious injury to her leg which left Bonnie bedridden in 2015, they became friends. In the summer of 2016, Bonnie and her husband decided they needed help around the house with their three children, M.C., L.C., and E.C.

Over the next several years, although Gallagher's primary residence was in South Carolina, he would stay with the Crump family intermittently to assist with the children for extended periods. He had a designated bedroom in the Crumps' home and vacationed and spent holidays with them. Bonnie testified that Gallagher

2

helped with the children and became especially close to L.C., who was on the autism spectrum and did not have many friends.

In December 2019, their oldest daughter, M.C., outcried to a counselor at school that Gallagher had been touching her inappropriately. The school immediately called law enforcement officers. The Crumps met with school officials and law enforcement officers. Ultimately, through the investigation, law enforcement learned that Gallagher had also sexually abused L.C.

Investigators seized Gallagher's cell phone without a warrant and then searched it after obtaining a search warrant. During the search, officers found evidence relevant to proving the claims in the four-counts of Gallagher's indictment. Police also obtained records and data from Google and Dropbox after obtaining other search warrants requiring Google and Dropbox to allow police to search files tied to Gallagher from those services. The Dropbox materials included a naked video of Gallagher addressing L.C., a photograph of M.C. in her underwear, and other evidence relevant to proving Gallagher guilty of the offenses of sexual indecency and sexual performance with a child, L.C. At trial, Gallagher moved to suppress the seizure and search of his phone, Google records, and Dropbox records. On appeal, Gallagher raises one issue, challenging the seizure of his phone, arguing it was seized without a warrant violating the Texas Code of Criminal Procedure Article 38.23 and the Fourth Amendment.

The trial court did not conduct the evidentiary hearing on the defendant's motion to suppress until after the trial began. Before the trial court conducted the suppression hearing outside the jury's presence, the jury heard Detective Jason Buckner, an employee of the Montgomery County Sheriff's Office, testify that on December 6, 2019, he received a call from Patrol Sergeant Johnson who gave him "some details" about M.C.'s outcry. According to the detective, Sergeant Johnson said Gallagher's primary residence was in South Carolina, which Gallagher confirmed. Detective Buckner testified that he told Sergeant Johnson that he would go to the scene immediately to start his investigation since "we had a defendant that was going to be leaving the state very soon[.]" Detective Buckner added that while en route to the scene, he spoke with Sergeant Johnson again. Sergeant Johnson then gave him additional details as to M.C.'s outcry. Detective Buckner explained that after arriving on the scene, he spoke with Deputy Fry. Deputy Fry, already on the scene before Detective Buckner arrived, advised Detective Buckner of the "full outcry from everybody." Detective Buckner explained that when he "pulled up to the scene," he saw Gallagher "appearing very nervous, pacing the driveway, walking back and forth really fast."

At that point, the prosecutor approached the bench and advised the trial court that he was "about to get into the seizure of the phone." The trial court recessed the

4

trial, allowed the jury to leave the courtroom, and went on to conduct a hearing on Gallagher's Motion to Suppress.

Motion to Suppress Hearing

During the suppression hearing, Detective Buckner testified about the seizure and subsequent search of Gallagher's phone. Detective Buckner said that he seized Gallagher's phone without detaining Gallagher, and without his consent or the benefit of a search warrant. When Detective Buckner seized the phone, he already knew Gallagher was a registered sex offender in South Carolina. And Detective Buckner knew the offense in South Carolina involved "a sexting incident where electronic devices were used to message and send pictures underage children." According to Detective Buckner, when he seized the phone it was his understanding that M.C.'s account, based on her outcry, involved Gallagher touching her on top of and under her clothes, the sexual acts involving the two had occurred over a period of two to three years, and they all had occurred at the Crumps' home. Buckner explained that he seized Gallagher's phone because he knew that 1) Gallagher was leaving the state, 2) the cell phone contained geolocation data, which could be used to corroborate M.C.'s outcry based on Gallagher's location when the incidents occurred, and 3) he was concerned that the case in South Carolina also involved Gallagher's use of electronic communications. Detective Buckner testified that after

5

seizing Gallagher's phone, he took it to the sheriff's crime lab division where he submitted it as evidence.

Detective Buckner told the trial court he was officially assigned to Gallagher's case on December 9, 2019. A magistrate issued a search warrant for Gallagher's phone on January 13, 2020. The detective explained that between December 6 and January 13, the Crumps children were interviewed, M.C. underwent a SANE exam, and detectives interviewed the children's caregivers and filed search warrants. Detective Buckner testified that Gallagher never requested that the police return his phone and that Gallagher "did not even want to touch the cell phone and wanted nothing to do with the phone." Detective Buckner explained that before police obtained the search warrant for the phone, M.C. told the person who interviewed her that Gallagher took pictures of her that she made him delete, which also led Detective Buckner to believe his phone might contain evidence of a crime.

During the hearing, copies of the search warrants for the phone, Google records, and Dropbox records were admitted into evidence. In the Application for Search Warrant to Access Cellular Telephone, Detective Buckner outlined what he knew when he seized Gallagher's phone. In the application, the detective described M.C.'s outcry to her school counselor where M.C. told her Gallagher had been touching her genitals and breasts for two to three years. Detective Buckner averred he relayed that information to Deputy Fry, who was dispatched to the school. In the

6

application, Buckner also swore he arrived at the Crumps' residence, where Gallagher was staying, so he could collect evidence and interview Gallagher. Detective Buckner further asserted he attempted to speak with Gallagher about M.C.'s allegations to the counselor, but Gallagher advised he wanted to speak to an attorney. Detective Buckner then stated he seized Gallagher's phone, which Gallagher had on his person, "to preserve any possible evidence that may have been contained on or within it." Finally, in applying for the search warrant Detective Buckner swore that he had "reason to collect the phone due to the defendant living out of state and knowing that cell phones contain geographical evidence and GPS coordinates that would indicate the defendant was in the location the assaults occurred as stated by the victim M.C. at the time of the outcry."

Gallagher argued that the seizure of the cell phone was wrong, and the evidence police subsequently seized from his phone even though seized with the benefit of a search warrant was "fruit of the poison tree." The State argued the cell phone was in plain view, officers seized it based on their knowledge at the time, and police had used due diligence to get a warrant to search Gallagher's phone. The defense further argued that the information available to police when they seized the phone did not include information that Gallagher used his cell phone to record M.C. In addition, Gallagher argued that even though the State claimed Gallagher was a registered sex offender, the State failed to provide a copy of the judgments of

conviction on any offenses in South Carolina, and he claimed the trial court had not heard any testimony the offenses in South Carolina involved Gallagher's use of a phone. Finally, Gallagher argued that neither the Crumps nor Gallagher told police he was going to South Carolina. In response, the prosecutor argued Detective Buckner "said Sergeant Johnson told him that." At the conclusion of the hearing, the trial court denied Gallagher's Motion to Suppress.

Trial on the Merits: The Additional Testimony About the Seizure of Gallagher's Phone

During the trial on the merits, the defense questioned Detective Buckner about the circumstances surrounding the seizure of Gallagher's phone. When he was cross-examined, Detective Buckner testified that he read Gallagher his Miranda rights and then seized Gallagher's phone. According to the detective, he saw the phone in either Gallagher's hand or his pocket, and Gallagher gave him the phone when he was asked. Detective Buckner added that Gallagher identified the phone as his.

Findings of Fact and Conclusions of Law

Following the trial, the trial court issued Findings of Fact and Conclusions of Law. As relevant to the seizure of Gallagher's phone, the trial court found:

. . .

2. Former Detective Jason Buckner, formerly of the Montgomery County Sheriff's Office (MCSO), testified during the suppression hearing related to the defendant's cell phone.
3. Buckner's testimony was credible.

8

4. Buckner had nearly twenty years of experience as a peace officer.

5. On December 6, 2019, Buckner was the on-call detective and responded to the residence where the defendant was located in Montgomery County, Texas.

6. Buckner received information from officers who responded to the school where M.C., a child, was located as well as his supervisor while en route to, and while on location at the residence where the defendant was located.

7. Buckner made contact with the defendant, who was in possession of a cell phone.

8. Buckner had information from the outcry that the defendant touched the complainant in her private areas over two or three years during times when he visited the residence.

9. Buckner had information that the defendant's primary residence was in South Carolina.

10. Buckner had information that the defendant was a registered sex offender out of South Carolina and that the offense he was convicted of involved the use of electronic device(s) in the commission of the offense.

11. Buckner knew, based on his training and experience, that cellular devices contain location data information and that the defendant's cell phone may contain information about the defendant's location at the time of the alleged abuse, which was alleged to have occurred over a period of years.

12. Buckner testified that the defendant expressed his intent to leave the state of Texas.

13. Buckner testified that based on his training and experience, he seized the phone to prevent evidence from being taken out of state and lost.

14. Buckner testified that M.C., a child, had a forensic interview on December 10, 2019, which revealed information about the defendant taking illicit photographs of her during the course of the abuse.

15. Buckner testified that during the month of December he was also working on other pending investigations in his caseload and took some days off for the holidays.

16. Buckner testified that the defendant never reached out to Buckner about his cell phone.

17. Buckner applied for and was granted a warrant to search the defendant's cell phone on January 13, 2020, and delivered the cell phone search warrant to the MCSO Crime Lab for analysis.

18. Buckner left his employment with the MCSO and Detective Burdette Taylor was assigned the case on January 24, 2020.

. . .

28. Taylor testified that he submitted the defendant's cell phone to the Montgomery County Internet Crimes Against Children (ICAC) Task Force for assistance with another attempt to execute the cell phone search warrant on June 10, 2021.

29. Taylor testified that on July 12, 2021 he reviewed the completed cell phone extraction report from the ICAC Task Force and identified numerous images of child sexual abuse or exploitation material / child pornography of L.C., a child.

The trial court's conclusions of law pertaining to the cell phone included:

1. Based on Buckner's training, experience, and the circumstances as he perceived them, Buckner had probable cause to believe that the defendant's cell phone contained evidence at the time he seized the cell phone from the defendant. *See* U.S. Const. amend. IV; Tex. Const. Art. I, Sec. 9.

2. The warrantless seizure was reasonable and authorized under article I, sec. 9. *See* Tex. Const. Art. I, Sec 9.

3. The time-period between seizure of the defendant's cell phone on December 9, 2019 by Detective Buckner and the granting of a search warrant on January 13, 2020 was not a constitutionally unreasonable delay.

4. The cell phone data was extracted pursuant to a lawful search warrant supported by probable cause. *See* Tex. Const. Art. I, Sec. 9; Texas Code of Criminal Procedure Art. 18.0215.

## STANDARD OF REVIEW

We review rulings on motions to suppress under a bifurcated standard. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018); *Dugar v. State*, 629 S.W.3d 494, 497 (Tex. App.—Beaumont 2021, pet. ref'd). We give almost total deference to the trial court's findings of fact and review its application of law to the facts *de novo*. *See Martin v. State*, 620 S.W.3d 749, 759 (Tex. Crim. App. 2021)

10

(citation omitted). We review *de novo* whether a specific search or seizure was reasonable. *See Igboji v. State*, No. PD-0936-20, 2023 WL 2396388, at \*4 (Tex. Crim. App. Mar. 8, 2023). In a motion to suppress hearing, "the trial judge is the sole trier of fact and judge of credibility of witnesses and the weight to be given to their testimony." *Lerma*, 543 S.W.3d at 190. When, as here, the trial court issues findings of fact, we review the record in the light most favorable to the trial court's ruling and uphold those findings if the record supports them. *See Martin*, 620 S.W.3d at 759 (quoting *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017)). We will uphold a trial court's ruling if correct under any applicable theory of law and reasonably supported by the record. *See id.*; *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019).

Generally, we limit our review to the record of the suppression hearing. *See Igboji*, 2023 WL 2396388, at \*4. However, when the parties relitigate the suppression issue in the trial, the scope of our review includes the evidence relevant to the suppression evidence admitted in both the suppression hearing and in the trial. *See Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

## ANALYSIS

In his sole issue, Gallagher asserts that the trial court erred by denying his Motion to Suppress based on multiple constitutional provisions, but his substantive briefing and legal authority address only the Fourth Amendment and Texas Code of

11

Criminal Procedure article 38.23(a), so we limit our discussion accordingly. *See* Tex. R. App. P. 38.1(i) (setting forth requirements for an appellant's brief to include citations to authority and to the record for the arguments made). In support of his issue, he contends his "cell phone was seized unlawfully in violation of the Fourth Amendment of the U.S. Constitution and all evidence obtained or derived therefrom was obtained unlawfully[,]" and under Texas Code of Criminal Procedure article 38.23(a), any evidence obtained in violation of the Constitution should not be admitted. Finally, he argues that the State's evidence does not establish exigent circumstances.

> The Fourth Amendment to the United States Constitution provides:
>
> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The Fourth Amendment's purpose is to safeguard a person's legitimate expectation of privacy from unreasonable government intrusions. *Villareal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (citation omitted). "A warrantless search or seizure is *per se* unreasonable under the Fourth Amendment unless it falls within a recognized exception to the warrant requirement." *Igboji*, 2023 WL 2396388, at *4 (citations omitted).

12

The existence of exigent circumstances is one such exception. *Igboji*, 2023 WL 2396388, at *4. This "exception applies when 'the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.'" *Id.* (quoting *Kentucky v. King*, 563 U.S. 452, 460 (2011)). This exception permits law enforcement to handle situations that compel the "need for official action and no time to secure a warrant." *Missouri v. McNeely*, 569 U.S. 141, 149 (2013); *Igboji*, 2023 WL 2396388, at *4.

Once a defendant shows that a warrantless search or seizure has occurred, the burden shifts to the State to prove an exception to the warrant requirement applies. *Igboji*, 2023 WL 2396388, at *5. Generally, the State must satisfy a two-step process to validate a warrantless search based on exigent circumstances; a warrantless seizure can be justified by showing 1) first, the existence of probable cause and 2) second, an exigency. *See id.*[2] With respect to the first step, "probable cause exists 'when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the

---

[2]*Compare Igboji v. State*, No. PD-0936-20, 2023 WL 2396388, at * (Tex. Crim. App. Mar. 8, 2023), *with U.S. v. Place*, 462 U.S. 696, 701–02 (1983) (recognizing exigent circumstances for seizing a container for a reasonable period may depend on reasonable suspicion rather than probable cause), *and Rafiq v. State*, No. 09-20-00094-CR, 2022 WL 3868104, at **9–11 (Tex. App.—Beaumont Aug. 31, 2022, pet. filed) (same); *see also Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002) ("A seizure based on reasonable suspicion or probable cause will generally be reasonable.") (citing *Whren v. U.S.*, 517 U.S. 806, 818 (1996); *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)).

13

instrumentality . . . or evidence of a crime will be found.'" *Id.* (quoting *Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005)). Probable cause "is not a high bar[.]" *Kaley v. U.S.*, 571 U.S. 320, 338 (2014); *Gutierrez v. State*, 585 S.W.3d 599, 609 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Second, an exigency requiring an immediate action by law enforcement must exist. *Igboji*, 2023 WL 2396388, at *5. Three recognized categories of exigent circumstances that justify a warrantless intrusion by law enforcement are: (1) giving aid or assistance to persons whom law enforcement reasonably believes need assistance; (2) protecting police officers from persons whom they reasonably believe are present, armed, and dangerous; and (3) preventing destruction of contraband or evidence. *Id.* Here, we are concerned with the third category of exigency.

To determine whether exigent circumstances exist, courts look to the totality of the circumstances when the seizure occurred. *See id.* at *4; *see also Lange v. California*, 141 S.Ct. 2011, 2018, 210 L.Ed.2d 486 (2021); *Cole v. State*, 490 S.W.3d 918, 923 (Tex. Crim. App. 2016). The record must show facts suggesting an imminent destruction of evidence, not necessarily affirmative conduct on the suspect's part. *Igboji*, 2023 WL 2396388, at *6. This may be shown where a suspect controls easily disposable evidence. *See, e.g., Gutierrez*, 585 S.W.3d at 610 (explaining State showed exigent circumstances for seizing cell phone since appellant had control over easily disposable evidence); *Orosco v. State*, No. 03-15-

14

00383-CR, 2017 WL 2873352, at *6 (Tex. App.—Austin June 29, 2017, pet. ref'd) (mem. op., not designated for publication) (upholding seizure of cell phone where the police had information defendant recorded sexual assault and noting the police could reasonably have believed that temporarily seizing the cell phone was necessary to obtain a warrant and the delay might result in destruction of evidence if the phone was returned).

It is undisputed that Detective Buckner seized Gallagher's cell phone without a warrant. We must decide whether the cell phone was illegally seized rather than illegally searched, as the record shows the cell phone was not searched until a magistrate issued a search warrant and the validity of the warrant hasn't been challenged in the appeal. *See Segura v. U.S.*, 468 U.S. 796, 806 (1984) (citations omitted) (recognizing different interests implicated by a seizure versus search).

Probable Cause

We first turn to whether the trial court abused its discretion in finding that probable cause supported Detective Buckner's seizure of Gallagher's phone. *See Igboji*, 2023 WL 2396388, at *5 (explaining that first step in establishing exigent circumstances exception is to show probable cause existed). First, the evidence allowed the trial court to find that Detective Buckner seized Gallagher's phone since the trial court could had the discretion to believe Detective Buckner that Gallagher told the detective the phone was his. When the detective seized the phone, the trial

15

court could have also reasonably found that, based on information Detective Buckner obtained from Sergeant Johnson and Deputy Fry, that (1) M.C. told her school counselor that Gallagher had assaulted her over a period of years in the Crumps' home, (2) Gallagher was a registered sex offender in South Carolina for an offense involving electronic communications with minors, and (3) Gallagher resided in South Carolina and would soon be leaving the state of Texas to go home. The trial court also heard testimony and could have reasonably believed Detective Buckner's testimony that there would be evidence on Gallagher's phone of crimes relevant to the indictment, evidence including geolocation data that could be used to place Gallagher on the scene where the crimes alleged in the indictment occurred. Given Detective Buckner's testimony, the trial court could reasonably have found that Detective Buckner, as a man of reasonable prudence, would have believed that evidence of crimes would be found on Gallagher's phone. *See id.*; *Estrada*, 154 S.W.3d at 609. Accordingly, we conclude the trial court did not abuse its discretion in finding that probable cause existed when Detective Buckner seized Gallagher's phone. *Igboji*, 2023 WL 2396388, at *5; *Estrada*, 154 S.W.3d at 609.

Exigency: Preservation of Evidence

Turning to the second step of the exigency exception, we must determine whether the trial court abused its discretion in finding that it was immediately necessary for Detective Buckner to seize Gallagher's phone to preserve the evidence

16

the detective reasonably believed he would find after obtaining a search warrant authorizing the police to search Gallagher's phone. *See Igboji*, 2023 WL 2396388, at \*5. Detective Buckner testified that when he pulled up to the scene, he saw Gallagher pacing back and forth in the driveway and behaving nervously after seeing there were officers at the house. Detective Buckner also testified he was concerned about Gallagher leaving the state since he lived in South Carolina. Detective Buckner would have known that evidence on a cell phone could be easily erased or destroyed, so should police leave the scene without Gallaher's phone, they might not have another chance to preserve what it had on it that would be relevant to tying Gallagher to any sexual offenses involving M.C. Detective Buckner testified he seized Gallagher's phone to preserve the evidence on it. Examining the totality of the circumstances when the seizure occurred, the record allowed the trial court to find there was an imminent risk the evidence on Gallagher's phone would be destroyed had the phone not been seized by police. *See id.* at \*4, 6; *Gutierrez*, 585 S.W.3d at 610 (discussing exigent circumstances where suspect had control over easily disposable evidence).

In addition, when determining whether a warrantless seizure was reasonable, we usually balance the privacy-related and law enforcement-related concerns. But here, Gallagher has not complained about the time between when the police seized his phone and when they obtained a search warrant. *See Illinois v. McArthur*, 531

U.S. 326, 331 (2001). That said, a seizure that is reasonable at its inception may become unreasonable due to its duration or for other reasons. *Segura v. United States*, 468 U.S. 796, 812 (1984). Whether a defendant presents evidence that he sought return of the evidence or that being deprived of the evidence adversely affected him is something courts may consider when determining whether the delay in obtaining a warrant after the seizure was unreasonable. *See, e.g., King v. State*, No. 03-17-00276-CR, 2018 WL 5728765, at *9 (Tex. App.—Austin Nov. 2, 2018, pet. ref'd) (mem. op., not designated for publication) (upholding warrantless seizure of phone where there was over a sixth-month delay in obtaining first warrant and two-year delay in obtaining a second warrant where defendant was in jail almost the entire time phone was seized and failed to present evidence showing he sought return of the phone, or that being without the phone adversely affected him); *see also United States v. Johns*, 469 U.S. 478, 487 (1985) (noting that where defendants never sought return of property, it weighed against a finding that delay in the search adversely affected legitimate Fourth Amendment interests). Another consideration is whether police have probable cause to believe property contained evidence of unlawful conduct. *See McArthur*, 531 U.S. at 331–32 (concluding search was reasonable where, among other reasons, police had probable cause to believe property contained evidence of unlawful drugs).

During the suppression hearing, Detective Buckner explained what occurred between the phone's seizure and when police obtained a warrant. Among other things, M.C. saw a SANE, forensic interviews of the children occurred, detectives interviewed the children's caregivers, and police filed and obtained search warrants. Detective Buckner testified that Gallagher never asked for his phone to be returned or introduced evidence of how the lack of his phone caused any adverse impact. *See King*, 2018 WL 5728765, at *9. Balancing the privacy-related and law enforcement-related concerns, we conclude the length of the seizure before police obtained a warrant was not unreasonable since: 1) law enforcement had probable cause to believe the phone contained evidence that Gallagher had committed a crime; 2) in the month police had Gallagher's phone before they obtained a search warrant, they were actively conducting an investigation into the offenses at issue in the appeal; and 3) Gallagher didn't ask police or a court to require police to return the phone or show how the lack of the phone caused any harm. *See McArthur*, 531 U.S. at 331–32; *Johns*, 469 U.S. at 487; *King*, 2018 WL 5728765, at *9.

Having determined that the trial court did not abuse its discretion in finding that Detective Buckner had probable cause and needed to prevent the imminent destruction of evidence on the phone, we conclude the trial court did not err in denying Gallagher's Motion to Suppress. We overrule Gallagher's sole issue.

CONCLUSION

Having overruled Gallagher's sole issue, we affirm the trial court's judgments.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on March 15, 2023
Opinion Delivered April 26, 2023
Do Not Publish

Before Golemon, C.J., Horton and Wright, JJ.