*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES
_____

### UNITED STATES
Appellee/Cross-Appellant

**v.**

### Jeremy W. HARBORTH, Chief Master-at-Arms
United States Navy, Appellant/Cross-Appellee

**Nos. 24-0124 & 24-0125**
Crim. App. No. 202200157

Argued November 5, 2024—Decided June 3, 2025

Military Judges: Melanie J. Mann (arraignment and motions) and Chad C. Temple (motions and trial)

For Appellant/Cross-Appellee: *Lieutenant Raymond E. Bilter*, JAGC, USN (argued); *Lieutenant Colonel Matthew E. Neely*, USMC (on brief).

For Appellee/Cross-Appellant: *Major Mary Claire Finnen,* USMC (argued); *Lieutenant Commander Paul S. LaPlante*, JAGC, USN, *Lieutenant Commander James P. Wu Zhu*, JAGC, USN, *Colonel Joseph M. Jennings*, USMC, *Colonel Iain D. Pedden*, USMC, and *Brian K. Keller*, Esq. (on brief).

Judge JOHNSON delivered the opinion of the Court, in which Chief Judge OHLSON and Judge SPARKS joined and Judge MAGGS and Judge HARDY joined with respect to Parts I, II.A, II.B, and III. Judge MAGGS filed a separate opinion concurring in part and in the judgment, in which Judge HARDY joined.

Judge JOHNSON delivered the opinion of the Court.

This case raises issues regarding the applicability of the Fourth Amendment to a seizure by a private actor and the implications for the Government when it accepts the same. A panel with enlisted representation convicted Appellant/Cross-Appellee (Appellant) of three specifications of indecent visual recording and one specification of production of child pornography in violation of Articles 120c and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920c, 934 (2018). The panel of members sentenced him to confinement for eighteen months and a bad-conduct discharge.

The United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) affirmed one specification, dismissed one specification with prejudice, and set aside the last specification of indecent visual recording. *United States v. Harborth*, 84 M.J. 509, 516 (N-M. Ct. Crim. App. 2023). The NMCCA set aside the remaining charge and specification of production of child pornography after concluding the Government's retention of Appellant's electronic devices for three months without authorization was an unreasonable seizure. *Id.* at 531, 536. The Judge Advocate General of the Navy certified five issues for review,[1] and this Court granted review of a sixth issue raised by Appellant:[2]

> I. Did the military judge err by (1) finding the warrantless seizure of [Appellant's] electronic devices was justified by probable cause, and (2) not ruling on law enforcement's reliance on actual and apparent authority?
>
> II. Did the lower court err in ruling that law enforcement could not rely on actual or apparent authority and by holding the delay in securing a search authorization was

---

[1] *United States v. Harborth*, 84 M.J. 344, 344-45 (C.A.A.F. 2024) (notice of certificate for review).

[2] *United States v. Harborth*, 85 M.J. 95 (C.A.A.F. 2024) (order granting review).

unreasonable, thereby setting aside [Appellant's] convictions?

III. Did the lower court err in failing to find that [Appellant] waived objection to the duration of the seizure, when [Appellant] never objected at trial to the duration of the seizure, and Mil. R. Evid. 311 states that objections not made at trial are waived?

IV. Did the lower court err in failing to first determine whether Ms. Hotel was a government actor, and if so, did Ms. Hotel's actions constitute government action, thus implicating Fourth Amendment protection, when she seized [Appellant's] other devices and provided them to HPD and NCIS?

V. Having found a reasonable probability that a motion to suppress the results of the seizure and search of [Appellant's] iPhone XS would have been meritorious, did the NMCCA err in not finding prejudice from the defense counsel not moving to suppress this evidence?

VI. Was the trial defense counsel ineffective by not seeking suppression of all evidence derived from the unlawful seizure of [Appellant's] property?

Addressing Issue III, we hold Appellant waived objection to the duration of the seizure by failing to raise the objection at trial. Turning next to Issue IV, we hold Ms. Hotel was a private actor, and therefore, the Fourth Amendment was not implicated when she seized Appellant's devices. We decline to answer Issues I and II, which have been rendered moot by our resolution of Issues III and IV. Lastly, answering Issue VI, we hold trial defense counsel's failure to object to the duration of the seizure of his devices was not ineffective. We decline to answer Issue V, which has been rendered moot by our resolution of Issue VI. Accordingly, we reverse the decision of the NMCCA.

## I. Background

*Appellant turns his iPhone XS over to his wife*

On Saturday, May 11, 2019, Appellant was driving with his wife, Ms. Hotel, and his fifteen-year-old stepdaughter, Ms. November, when an argument erupted over Appellant's alleged infidelity. Ms. Hotel asked to see his phone. Appellant resisted, telling her "there were things on his phone he didn't want [her] to see." Ms. November grabbed the iPhone XS out of his hand and turned it over to her mother. Ms. Hotel demanded his password, which he eventually surrendered.

After arriving home, Ms. Hotel and Ms. November went into the house first, locked all the doors, and looked through the photos. Ms. Hotel did not find any inappropriate photos until Ms. November suggested she look through the deleted photos folder. There, Ms. Hotel found six photos of her daughter. Two were of Ms. November sunbathing. The others were taken by a security camera located in Ms. November's bedroom[3] and showed her changing clothes in her bedroom. In one of the photos, her breasts were exposed. After seeing these photos, Ms. Hotel called the police.

Meanwhile, Appellant made his way into the garage where he was confronted by Ms. Hotel. Concerning the photos, she asked him, "What were you going to do? Were you going to pleasure yourself to them?" Appellant responded, "No, no, but I thought about it." Ms. Hotel punched him.

*Ms. Hotel turns over Appellant's iPhone XS to HPD*

Officer Tango of the Honolulu Police Department (HPD) arrived to find Appellant in front of his home. Appellant admitted getting into an argument with his wife over inappropriate photos of his minor stepdaughter. Officer Tango assured Appellant no one was in trouble yet, to which Appellant responded, "[I]t's bad, I need help. You

---

[3] Appellant's home was outfitted with a Vivint security system with cameras in every room.

should just arrest me now." Officer Tango then spoke with Ms. Hotel, who showed him the four photos she had seen of Ms. November on the iPhone XS. Another HPD officer on scene, Officer Bravo, took photos of the images as Ms. Hotel flipped through them. Ms. Hotel then turned the iPhone XS over to HPD. That same day she attempted to give HPD more devices, but Officer Tango refused to accept them because "there was no probable cause that the devices had content relevant to this particular case."

After HPD left, Ms. Hotel accessed Appellant's iPad 4. After connecting to iCloud, she saw emails sharing links to video clips associated with the Vivint account. Ms. Hotel testified those emails were sent to Appellant and she personally viewed approximately twenty of them. In the videos, Ms. Hotel saw her naked daughter masturbating. Two days later, on May 13, 2019, she turned that iPad 4, an additional iPad, and another iPhone, all belonging to Appellant, over to HPD.

### *NCIS's investigation begins the same day Ms. Hotel turns over Appellant's iPhone XS to HPD*

On May 11, 2019, the same day Ms. Hotel turned over Appellant's iPhone XS to HPD, HPD informed Naval Criminal Investigative Service (NCIS) about its case against Appellant. NCIS opened its own investigation and requested primary jurisdiction from HPD. NCIS assigned the case to Special Agent (SA) Kilo.

On May 15, 2019, four days after the investigation was opened, Ms. Hotel consented to a permissive search authorization "of her residence for electronic evidence." By the time agents arrived to conduct the search, Ms. Hotel had collected a box of Appellant's electronic devices she had found amongst his personal belongings. She gave the agents the box of devices, saying, "here's some stuff that might be helpful to you." She also showed agents the Vivint wall security panel with surveillance footage from around the house, including surveillance videos of Ms. November nude or partially nude. NCIS agents photographed the location and angle of the Vivint security cameras, including

the one in Ms. November's room, and then seized the Vivint security panel with Ms. Hotel's permission.[4]

Ms. Hotel turned over eleven electronic devices to NCIS on May 15, 2019, including the Vivint security panel, an iPhone 6s, and numerous electronic devices capable of storage.[5] A little more than a week later, NCIS received the devices Ms. Hotel previously turned over to HPD.

*NCIS secures search authorization*

On May 29, 2019, Appellant was brought to NCIS for questioning. After being advised of his Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2018), rights, Appellant elected to remain silent and refused consent to search his electronic devices.

After these initial steps, the investigation slowed. SA Kilo transferred, and the case was reassigned to SA Mike. On June 24, 2019, forty-four days after NCIS started its investigation, SA Mike met with Ms. Hotel to discuss the electronic devices she had turned over before SA Mike was assigned to the case, and to ask why she turned over each device. In a hearing on the motion to suppress, SA Mike testified that Ms. Hotel had gathered the electronic devices on her own initiative; "[s]he was not tasked to do anything."

Forty-three days after the interview, on August 6, 2019, SA Mike sent a draft command authorization for search and seizure (CASS) to the staff judge advocate for review. One week later, on August 13, 2019, ninety-four days after Ms. Hotel gave Appellant's iPhone XS to HPD, the CASS was approved.

---

[4] Evidence seized from the Vivint security panel is not at issue in this appeal.

[5] More than twenty devices were eventually logged in evidence, including the items turned over by Ms. Hotel in the early days of the investigation.

*The forensic examination of Appellant's devices yields more nude videos and images*

NCIS's forensic examination of Appellant's devices revealed the presence of the Vivint security mobile application on three devices: the iPhone XS, the iPhone 6s, and the iPad 4. In total, NCIS found 126 videos from the Vivint security camera saved on these three devices. Appellant's iPhone XS also contained several images of Ms. November changing clothes in addition to the deleted photos viewed by Ms. Hotel.

*Trial defense counsel moves to suppress evidence retrieved from Appellant's devices*

In a written pretrial motion, trial defense counsel moved to suppress evidence from the "search of the accused's iPhone XS and the unconstitutional seizures of the accused's other iPhones and iPads." He reiterated during oral argument on the motion that Appellant sought to suppress the "unlawful search of the iPhone X[S]" and offered "a separate argument" concerning "the seizure of the other three Apple devices." Neither party mentioned the duration of the seizure, the time it took for the Government to get a CASS, the diligence of the investigative agents, or the reasonableness of the investigation's speed.

Ruling on the motion, the military judge found that "law enforcement officers did not search the devices, ask for them, or collect them while searching the home. Rather, [Ms. Hotel], of her own volition, collected and provided" Appellant's electronic devices. Yet, the military judge did not rule on whether the seizure was justified because Ms. Hotel was a private actor. Instead, the military judge denied the motion on the grounds that the seizure was justified by probable cause and inevitable discovery applied.

**II. Discussion**

Starting with Issue III, we hold Appellant waived any challenge to the duration of the seizure of all of his devices. Turning next to Issue IV, we hold Ms. Hotel was a private

actor, and therefore her actions were not constrained by the Fourth Amendment. Finally, answering Issue VI, we hold trial defense counsel was not ineffective because a motion to suppress would not have been successful. Our resolution of these issues renders Issues I, II, and V moot.

### A. Appellant waived objection to the duration of the seizure (Issue III)

The third certified issue requires us to determine whether the lower court erred by failing to find that Appellant waived objection to the duration of the seizure. Suppression arguments not raised at trial are waived. Military Rule of Evidence (M.R.E.) 311(d)(2)(A) (2019 ed.). When an issue is waived, "it is extinguished and may not be raised on appeal." *United States v. Gladue,* 67 M.J. 311, 313 (C.A.A.F. 2009). Preserving an argument requires a "particularized objection." *United States v. Perkins,* 78 M.J. 381, 390 (C.A.A.F. 2019). When constitutional rights are at issue, this Court has applied a presumption against finding waiver. *United States v. Blackburn,* 80 M.J. 205, 209 (C.A.A.F. 2020). "This Court reviews de novo whether an accused has waived an issue." *Id.*

In this case, notwithstanding the presumption against waiver of constitutional issues, Appellant waived challenging the duration of the seizure by failing to make a particularized objection to the duration at trial. Instead, the defense moved to suppress evidence from: (1) the search of the iPhone XS; and (2) the seizure of Appellant's other devices for lack of probable cause. We agree with the NMCCA that Appellant could not challenge the duration of the seizure of the iPhone XS on appeal where, at trial, he objected only to its search and he waived objection to its seizure. However, for the reasons set forth below, we disagree with the NMCCA's conclusion that he preserved objection to the duration of the seizure of the other devices.

In written and oral arguments in support of the motion to suppress, trial defense counsel specifically challenged the seizure of Appellant's other devices for lack of probable cause. Trial defense counsel never discussed the length of

the seizure as an independent ground for challenging the constitutionality of the seizure, let alone as a component of his probable cause attack. To the extent the parties discussed the timeline of the seizure, it was solely in the context of evaluating evidence of probable cause "at the moment of the seizure." We conclude the presumption against waiver of constitutional issues was overcome because the lack of a challenge to the duration of the seizure fails to meet the "particularized objection" requirement of M.R.E. 311(d)(2)(A). *Perkins*, 78 M.J. at 390.

The NMCCA cited *United States v. Griffith*, 867 F.3d 1265, 1277 (D.C. Cir. 2017), in support of the conclusion that Appellant's challenge on appeal to the duration of the seizure of Appellant's other devices was not waived because it was " 'simply an extension of his probable cause challenge, which he has pressed all along.' " *Harborth*, 84 M.J. at 524 (quoting *Griffith,* 867 F.3d at 1277). In *Griffith*, the appellant raised a probable cause challenge at the trial level and failed. 867 F.3d at 1270. On appeal, the appellant added an overbreadth argument, claiming there was no probable cause to seize devices of non-suspect residents of the same house as the appellant. *Id.* at 1277. Both arguments challenged the probable cause of the initial seizure, and the record was fully developed because the overbreadth challenge relied on the same facts as the probable cause argument at trial. *Id.* at 1277-78.

This case is distinguishable from *Griffith* because here, the legal theory was never raised at trial and the record was not fully developed. Instead, Appellant raised an entirely new ground for challenging a Fourth Amendment seizure for the first time on appeal—after any opportunity for the Government to explain or justify the delay had passed. Allowing Appellant to assert this argument for the first time on appeal frustrates the purpose of the "particularized objection" requirement as it prevents the Government from "present[ing] relevant evidence on the objection" at trial. *United States v. Bavender*, 80 M.J. 433, 436 (C.A.A.F. 2021) (citation omitted). Nor was this a

"subtle" theory woven throughout the defense's argument, which specifically and repeatedly asserted a lack of probable cause as the basis for the suppression motion. *Blackburn*, 80 M.J. at 210. The lower court erred in not recognizing this issue was waived.

### B. The seizure of Appellant's devices by Ms. Hotel, a private actor, did not implicate Appellant's Fourth Amendment right against unreasonable seizure (Issue IV)

Having concluded Appellant waived objection to the duration of the seizure of all of his devices, we turn next to the question of whether the initial seizure of his devices by Ms. Hotel was barred by the Fourth Amendment. Although the Government did not present the issue to the lower court, the Government certified to this Court the issue of whether the NMCCA erred by failing to determine that she was not a government actor subject to the Fourth Amendment.

"When reviewing a lower court's decision on a military judge's ruling, we 'typically have pierced through that intermediate level and examined the military judge's ruling, then decided whether the Court of Criminal Appeals was right or wrong in its examination of the military judge's ruling.'" *Id.* at 211 (quoting *United States v. Shelton*, 64 M.J. 32, 37 (C.A.A.F. 2006)). We review the military judge's ruling on a motion to suppress for abuse of discretion, considering the evidence in the light most favorable to the prevailing party. *United States v. Shields,* 83 M.J. 226, 230-31 (C.A.A.F. 2023). There is an abuse of discretion when the "military judge's findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *Id.* at 230 (internal quotation marks omitted).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has held that the

Fourth Amendment restrains government action, not private conduct. *United States v. Jacobsen*, 466 U.S. 109, 113-14 (1984). As such, its protections do not extend to "a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official." *Id.* (internal quotation marks omitted) (citation omitted). Determining whether a person is a private actor or "an agent of the [Government]" requires consideration of "*all* the facts and circumstances." *United States v. Buford,* 74 M.J. 98, 101 (C.A.A.F. 2015) (alteration in original) (internal quotation marks omitted) (citation omitted).

In this case, the analysis is straightforward because the parties agree: "Ms. [Hotel] was not acting as a government actor when she handed over [Appellant's] exclusive electronic devices to law enforcement." The parties' understanding is consistent with the military judge's findings of fact set forth in his ruling on the motion to dismiss: that "Ms. [Hotel] collected, of her own accord, multiple electronic devices and provided them to NCIS"; "Ms. [Hotel] provided Officer [Tango] with two iPads and an additional iPhone and requested that they be submitted into evidence"; and "[Ms. Hotel] provided a damaged Apple iPhone, model A1634, to Special Agent [Kilo] along with other electronic storage devices." Because Ms. Hotel was a private actor her seizure of Appellant's devices did not implicate the Fourth Amendment. Thus, we hold her seizure of Appellant's devices did not violate the Fourth Amendment prohibition against unreasonable seizures.[6]

---

[6] The NMCCA concluded that "the military judge's finding of fact that HPD officers did not ask for Appellant's devices, and that Ms. Hotel provided them of her own volition, is clearly erroneous." *Harborth*, 84 M.J. at 528 n.186. However, the NMCCA cited her testimony that she searched the residence for firearms at the direction of HPD. In light of the parties' agreement that Ms. Hotel acted on her own initiative in seizing Appellant's electronic devices and in the absence of any evidence

We also conclude there was nothing unlawful in the Government's receipt of the devices. The Supreme Court has long recognized "there [is] nothing wrongful about the Government's acquisition" of evidence that was seized, searched and turned over to the government by a private actor. *Walter v. United States*, 447 U.S. 649, 656 (1980) (plurality opinion) (first citing *Burdeau v. McDowell*, 256 U.S. 465 (1921); and then citing *Coolidge v. New Hampshire*, 403 U.S. 443 (1971)).[7] The Supreme Court reaffirmed this principle more recently, acknowledging that an individual "acting on his own initiative may be able to deliver evidence to the police" before police are required to obtain a warrant. *Georgia v. Randolph*, 547 U.S. 103, 116 (2006) (citing *Coolidge*, 403 U.S. at 487-89).

Appellant points to no affirmative obligation on the part of law enforcement to reject evidence voluntarily handed over by a private actor, and we know of no such obligation existing in any federal jurisdiction. To the contrary, we conclude that "where a private party produced evidence for government inspection, 'it was not incumbent on the police to stop her or avert their eyes.'" *Walter*, 447 U.S. at 661 (White, J., with whom Brennan, J., joined, concurring in part and in the judgment) (quoting *Coolidge*, 403 U.S. at 489). To hold otherwise would unreasonably require law

---

to the contrary, we reject the NMCCA's conclusion and conclude the military judge's findings of fact are not clearly erroneous.

[7] Both the concurrence and dissent agreed with the plurality that there was "nothing wrongful" about the government's acquisition of such evidence. *Walter*, 447 U.S. at 661 (White, J., with whom Brennan, J., joined, concurring in part and in the judgment) ("I agree with Mr. Justice Stevens that there was 'nothing wrongful' about the Government's examination of the contents of the packages that had been opened by private parties."); *id.* at 663 (Blackmun, J., with whom Burger, C.J., Powell, J., and Rehnquist, J., joined, dissenting) ("The opinion acknowledges that 'there was nothing wrongful about the Government's acquisition of the packages or its examination of their contents to the extent that they had already been examined by third parties.'").

enforcement to reject potential evidence of a known crime by a known suspect offered by a private actor.[8]

The initial seizure of Appellant's devices by Ms. Hotel, a private actor, was not constrained by the Fourth Amendment and law enforcement did "nothing wrong" in accepting the devices from her. But as Appellant argued at trial, once the Government took possession of the devices "for their own purposes," it became a seizure subject to the Fourth Amendment. *Jacobsen*, 466 U.S. at 120 n.18. As a result, the Government must still obtain a warrant or meet an exception to the warrant requirement to seize such evidence. *See id.* at 121. Mindful, however, that " 'the ultimate touchstone of the Fourth Amendment is reasonableness' . . . [t]he 'warrant requirement is subject to certain exceptions.' " *Lange v. California*, 594 U.S. 295, 301 (2021) (internal quotation marks omitted) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). One such exception allows for the temporary seizure of effects based upon probable cause or a "reasonable, articulable suspicion, premised on objective facts," of criminal activity. *United States v. Place*, 462 U.S. 696, 702 (1983); *Jacobsen*, 466 U.S. at 121.

The United States Court of Appeals for the Eleventh Circuit held that a warrantless seizure was reasonable under circumstances similar to this case in *United States v. Castaneda*, 997 F.3d 1318 (11th Cir. 2021). In *Castaneda*, two of the appellant's friends who were living in his condominium came across child pornography on his laptop while downloading a television show. *Id.* at 1326. They notified the FBI and turned over the laptop, along

---

[8] The Government was still obligated to secure search authorization, and did in fact obtain search authorization, before searching the devices. *See Walter*, 447 U.S. at 654 (plurality opinion) ("The fact that FBI agents were lawfully in possession of the boxes [of evidence] did not give them authority to search their contents."); *see also Jacobsen*, 466 U.S. at 120 n.17 ("A container which can support a reasonable expectation of privacy may not be searched, even on probable cause, without a warrant.").

with four other laptops belonging to the appellant. *Id.* After obtaining a warrant to search the devices, investigators discovered child pornography on two of the laptops. *Id.* The Eleventh Circuit rejected the appellant's argument that the evidence should be suppressed. *Id.* at 1327. First, the friends were not subject to the Fourth Amendment, and the FBI was not barred from accepting the devices. *Id.* at 1328. And second, even if the FBI's acceptance of the devices was a seizure, the court noted that law enforcement can lawfully seize property when a "private party has voluntarily relinquished" it to them and probable cause exists to believe the property contains contraband. *Id.* (citing *Jacobsen*, 466 U.S. at 120-22).

In this case, as in *Castaneda*, to the extent law enforcement's acceptance of Appellant's devices from a private actor was a seizure, it was reasonable. When HPD arrived at Appellant's residence, Appellant declared that the officers should arrest him. Ms. Hotel showed the officers nude images of her minor daughter that were saved on Appellant's iPhone XS. Two days later, she gave HPD three more devices, including an iPad on which she had seen child pornography recorded by the Vivint security system. Ms. Hotel subsequently gathered Appellant's other electronic devices on her own initiative and voluntarily relinquished them to NCIS, stating at one point, "here's some stuff that might be helpful to you." Even if the circumstances did not rise to probable cause, the seizure of the other devices was justified on a reasonable, articulable suspicion of criminal activity. *See Place*, 462 U.S. at 702.

### C. Ineffective assistance of counsel (Issue VI)

On appeal to the NMCCA, Appellant argued that to the extent he waived objection to the duration of the seizure of all his devices, trial defense counsel's failure to preserve the issue was ineffective. The NMCCA concluded that trial defense counsel waived objection to the seizure of the iPhone XS, *Harborth*, 84 M.J. at 523, but declined to reach the ineffective assistance claim. *Id.* at 533 n.244. The court was "convinced . . . that there is a reasonable probability that a motion to suppress the results of the seizure and

search of [Appellant's] iPhone X[S] would have been meritorious." *Id.* Nevertheless, the court found "the overwhelming evidence of guilt presents [an] insurmountable obstacle to Appellant claiming prejudice from his alleged ineffective assistance of counsel claim." *Id.* Therefore, the court concluded, there was "not a reasonable probability of a different verdict" even if the iPhone XS evidence had been suppressed. *Id.*[9]

The Judge Advocate General of the Navy certified to this Court Issue V, questioning whether the NMCCA erred in finding no prejudice after deciding there was a reasonable probability of success if the defense had challenged the duration of the iPhone XS seizure. We granted review of Issue VI raised by Appellant, whether trial defense counsel was deficient in failing to preserve the objection to the duration of the seizure of all of his devices. Addressing Issue VI, we hold there was no reasonable probability of success on a motion to suppress based on the duration of the seizure of Appellant's devices. Therefore, trial defense counsel was not deficient in failing to preserve the issue. We need not answer Certified Issue V, as our resolution of Issue VI renders moot the certified question on prejudice.

"The Sixth Amendment guarantees the right to effective assistance of counsel." *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). An ineffective assistance of counsel claim requires the appellant to demonstrate (1) counsel's performance was deficient, and (2) this deficiency caused prejudice. *United States v. Palik*, 84 M.J. 284, 288 (C.A.A.F. 2024). Under prong (1), to overcome the presumption of competence and show that counsel's performance was deficient where the " 'claim of ineffective assistance of counsel is premised on counsel's failure to make a motion . . . , an appellant must show that there is a

---

[9] The NMCCA concluded that trial defense counsel preserved the issue with respect to the other devices, 84 M.J. at 524; therefore, it did not address whether waiver of this challenge would have been ineffective assistance of counsel.

reasonable probability that such a motion would have been meritorious.'" *Id.* at 289 (alteration in original) (quoting *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001)). To establish prejudice under prong (2), the appellant must show "a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). This Court reviews ineffective assistance of counsel claims de novo. *United States v. Green*, 68 M.J. 360, 362 (C.A.A.F. 2010).

Appellant contends trial defense counsel was deficient in failing to preserve the argument that a three-month delay between the seizure of his devices and obtaining a CASS was unreasonable. Although there is no per se rule determining when an initially lawful seizure becomes unreasonable, *United States v. Gurczynski*, 76 M.J. 381, 387 (C.A.A.F. 2017) (noting that "neither the Fourth Amendment nor the Federal Rules of Criminal Procedure impose deadlines for the digital examination of seized devices"), we recognize that a "seizure [can become] unreasonable because its length unduly intruded upon constitutionally protected interests." *Jacobsen*, 466 U.S. at 124 n.25; *see also United States v. Cote*, 72 M.J. 41, 44 n.6 (C.A.A.F. 2013) (noting that even if a warrant does not contain a time limitation, "the Government nevertheless remains bound by the Fourth Amendment to the extent that all seizures must be reasonable in duration"). Here, we need not decide whether the three-month delay between the Government's receipt of Appellant's devices and obtaining a CASS was unreasonable because we conclude the military judge would not have applied the exclusionary rule even if he found the delay unreasonable.

The "exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring v. United States*, 555 U.S. 135, 144 (2009). "[F]or the exclusionary rule to apply 'the deterrent effect of suppression must be substantial and outweigh any harm to the justice system.'" *United States v. Lattin*, 83 M.J. 192,

197 (C.A.A.F. 2023) (quoting *Herring*, 555 U.S. at 147). Suppression of evidence is a "last resort." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).

Military Rule of Evidence 311(a) implements the Supreme Court's holding in *Herring. Lattin*, 83 M.J. at 197. Where the defense moves to suppress evidence under M.R.E. 311, the prosecution may defeat the motion by proving by a preponderance of the evidence "that the deterrence of future unlawful searches or seizures is not appreciable or such deterrence does not outweigh the costs to the justice system of excluding the evidence." M.R.E. 311(d)(5)(A).

The military judge never ruled on whether the exclusionary rule should apply because trial defense counsel never moved to suppress evidence on the basis of duration (hence the ineffective assistance of counsel claim). Nevertheless, the NMCCA held that exclusion of the evidence from the devices other than the iPhone XS required dismissal of one specification and a rehearing on two others. *Harborth*, 84 M.J. at 536. While acknowledging that this result would impose costs on the justice system, the NMCCA concluded the benefits of deterrence outweighed the costs. *Id.* at 532. The court arrived at this result for three key reasons: it believed law enforcement "directed Appellant's wife" to gather his electronic devices, *id.* at 531; it viewed the seizure as a "dragnet seizure" of the sort this Court has condemned, *id.* at 531-32 (citing *United States v. Nieto*, 76 M.J. 101, 108 n.5 (C.A.A.F. 2017)); and it found no reasonable officer could have concluded that Ms. Hotel had actual or apparent authority to consent to the seizure of Appellant's devices, *id.* at 528-29 (citing *United States v. Taylor*, No. 201900242, 2020 CCA LEXIS 137, at *43, 2020 WL 2086600, at *16 (N-M. Ct. Crim. App. Apr. 30, 2020) (unpublished)).

We are unpersuaded by the NMCCA's reasoning, primarily because these three reasons turn on the origin of the seizure and the NMCCA's characterization of Ms. Hotel as a government agent rather than the seizure's duration. This Court has previously concluded, by virtue of her being

a private actor, Ms. Hotel's collection of Appellant's devices did not implicate the Fourth Amendment. Law enforcement acted reasonably in accepting those devices from her, and they were not required to first ascertain whether Ms. Hotel had actual or apparent authority to turn over devices she had seized as a private actor.

Addressing the crux of Appellant's claim, there can be no doubt that Appellant's possessory interests were implicated to some degree by the Government's retention of his devices prior to the CASS. *See United States v. Hahn*, 44 M.J. 360, 362 (C.A.A.F. 1996) (" 'A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property.' " (quoting *Jacobsen*, 466 U.S. at 113)).

However, even if the military judge agreed with Appellant on the merits of the duration challenge, from the military judge's perspective the exclusionary rule would not have been appropriate because: (1) law enforcement's actions could not be described as deliberate, reckless, grossly negligent, or symptomatic of a recurring systemic issue, *Herring*, 555 U.S. at 144; and (2) the cost to the justice system is high.

Under the first factor, law enforcement did not deliberately, recklessly, or with gross negligence violate Appellant's possessory interests in his property. The military judge ruled as a matter of law that the seizure of the iPhone XS was justified by probable cause, and we have concluded that Ms. Hotel was a private actor when she turned over the other devices to law enforcement. Moreover, regarding the duration of the seizure, Appellant never requested the return of his devices, even when he was allowed to return home to collect his belongings. "[A] request for return may weigh in the analysis as to whether the government has acted in a reasonable or unreasonable manner by retaining an item." *Cote*, 72 M.J. at 47 (Baker, C.J., concurring in part and dissenting in part). This is because "a request gives police notice that the continued retention of the property is harming the owner." *Id.* at 49 n.3. Appellant's failure to request the return of his devices

either before or after the CASS was obtained suggests he was not harmed by the continued retention, weighing against application of the exclusionary rule. In addition, after Appellant refused consent to search, SA Mike scheduled an interview with Ms. Hotel to review all of the evidence she turned over and determine whether there was probable cause for a CASS. This does not demonstrate deliberate, reckless, or *gross* negligence.

The lack of gross indifference or deliberate neglect on the part of law enforcement in this case contrasts sharply with the facts in *Taylor*, relied upon by the NMCCA. *Taylor*, 2020 CCA LEXIS 137, at *47, 2020 WL 2086600, at *17-18.[10] In *Taylor*, the NMCCA held the military judge did not abuse his discretion in finding NCIS acted unreasonably when it waited six months to ask the ex-wife of the appellee for consent to search the appellee's devices. *Id.* at *47, 2020 WL 2086600, at *17. NCIS never sought search authorization. *Id.*, 2020 WL 2086600, at *17. It relied solely on the consent of appellee's ex-wife despite "substantial information showing [the ex-wife's] animosity toward" appellee. *Id.* at *42, 2020 WL 2086600, at *16. We find *Taylor* distinguishable as the issue there was not receiving evidence from a private actor but instead whether NCIS agents claimed apparent consent for a warrantless search to circumvent the need for a search authorization. *Id.*, 2020 WL 2086600, at *16. Therefore, we reject the NMCCA's characterization of law enforcement's actions here as "recurring or systemic negligence" thereby justifying the exclusionary rule. *Harborth,* 84 M.J. at 532 (internal quotation marks omitted) (quoting *Herring*, 555 U.S. at 144).

Turning now to the second factor, the cost to the justice system of applying the exclusionary rule would be high as it would result in dismissal of one specification and rehearing on two others.

---

[10] Although not binding on this Court, *Taylor* was cited by trial defense counsel, so we consider it to the extent it could have factored into the military judge's ruling.

This cost is not outweighed by the low deterrent effect in this case. The record does not indicate NCIS deliberately or recklessly violated Appellant's rights; rather it suggests law enforcement was sensitive to Appellant's rights.[11] For that reason, we cannot conclude the military judge would have applied the exclusionary rule.

To succeed in a claim of ineffective assistance of counsel on the basis of failing to file a motion, the appellant must show a reasonable probability of success. Because the military judge would not have applied the exclusionary rule, the motion to suppress did not have a reasonable probability of success. Therefore, we conclude trial defense counsel was not deficient in failing to challenge the duration of the seizure.

## III. Judgment

We answer Certified Issues III and IV in the affirmative. In light of our disposition of Certified Issues III and IV, we decline to answer Certified Issues I and II as moot. We answer Issue VI in the negative. In light of our disposition of Issue VI, we decline to answer Certified Issue V as moot. Therefore, we set aside the decision of the United States Navy-Marine Corps Court of Criminal Appeals. The case is returned to the Judge Advocate General of the Navy for remand to the Court of Criminal Appeals for further proceedings consistent with this opinion.

---

[11] *See supra* pp. 18-19.

Judge MAGGS, with whom Judge HARDY joins, concurring in part and in the judgment.

I concur in the Court's judgment to set aside the decision of the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) and to return the case to the Judge Advocate General of the Navy for remand to the NMCCA for further proceedings. I also join Parts I, II.A, II.B, and III of the Court's opinion. I differ just with respect to Part II.C.

Certified Issue VI asks whether Appellant had ineffective assistance of counsel at trial. Appellant asserts that his trial defense counsel's representation was deficient because his counsel did not ask the military judge to suppress evidence from his devices on the ground that the Government's three-month delay in obtaining a search authorization constituted an unreasonable seizure. The Court rejects this argument, reasoning that even if the military judge had determined that an unreasonable seizure had occurred, the military judge would not have excluded the evidence after applying the balancing test in Military Rule of Evidence 311(d)(5)(A).

I agree with the Court that the Sixth Amendment does not require counsel to make a motion to suppress evidence that is unlikely to succeed. *United States v. Jameson*, 65 M.J. 160, 164 (C.A.A.F. 2007) (citing *United States v. Del Rosario-Puente*, 41 F. App'x 483, 484 (1st Cir. 2002)). I also agree with the Court that the military judge was unlikely to grant a motion to suppress the evidence found on Appellant's devices. But my reasoning is different. While the Court decides that the military judge would not have applied the exclusionary rule, I believe that the military judge was unlikely to have found that the police's continued retention of the devices in this case constituted an *unreasonable* seizure. In my view, this is a simpler and less speculative reason for rejecting Appellant's ineffective assistance of counsel claim.[1]

---

[1] I express no opinion on the correctness of the Court's conclusion that the military judge would not have applied the

Even assuming that the police's retention of property voluntarily given to the police by a third party constitutes a "seizure," the Fourth Amendment prohibits only *unreasonable* seizures. *United States v. Jacobsen*, 466 U.S. 109, 120-21 (1984) (holding that federal agents' "assertion of dominion and control" over property was a warrantless seizure, but not an unreasonable one). A key fact in assessing the reasonableness of the police's actions in this case is that Appellant never asked the police to return his devices before they were searched.[2] Appellant has cited no precedent that clearly establishes that the government unreasonably interferes with an accused's possessory interests in property when the police's initial receipt of the property was not a seizure and the accused never requested the return of the property. Accordingly, a trial defense counsel could reasonably decide that seeking suppression would be futile because the military judge would not hold that an unreasonable seizure had occurred. Trial defense counsel's performance in this case therefore was not deficient.

---

exclusionary rule even if the military judge had found retention of the devices to be an unreasonable seizure.

[2] The Supreme Court recognized the Fourth Amendment significance of a lack of a request for the return of property in police custody in *United States v. Johns*, 469 U.S. 478 (1985). In that case, the police properly seized the defendants' trucks and had authority to search the contents of packages within the trucks. *Id.* at 483-86. The defendants, however, argued that federal agents had violated the Fourth Amendment by retaining possession of the packages found in the trucks for several days before searching them. *Id.* at 482-83. The Supreme Court rejected their argument, concluding that the search following the short delay "was reasonable" in part because the defendants "never sought return of the property." *Id.* at 487.